(Slip Opinion)                    OCTOBER TERM, 2011                    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FEDERAL AVIATION ADMINISTRATION ET AL. *v.* COOPER

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 10–1024.  Argued November 30, 2011—Decided March 28, 2012

Respondent Cooper, a licensed pilot, failed to disclose his human immunodeficiency virus (HIV) diagnosis to the Federal Aviation Administration (FAA) at a time when the agency did not issue medical certificates, which are required to operate an aircraft, to persons with HIV.  Subsequently, respondent applied to the Social Security Administration (SSA) and received long-term disability benefits on the basis of his HIV status.  Thereafter, he renewed his certificate with the FAA on several occasions, each time intentionally withholding information about his condition.  The Department of Transportation (DOT), the FAA's parent agency, launched a joint criminal investigation with the SSA to identify medically unfit individuals who had obtained FAA certifications.  The DOT provided the SSA with the names of licensed pilots, and the SSA, in turn, provided the DOT with a spreadsheet containing information on those pilots who had also received disability benefits.  Respondent's name appeared on the spreadsheet, and an investigation led to his admission that he had intentionally withheld information about his HIV status from the FAA.  His pilot certificate was revoked, and he was indicted for making false statements to a Government agency.  He pleaded guilty and was fined and sentenced to probation.  He then filed suit, alleging that the FAA, DOT, and SSA violated the Privacy Act of 1974, which contains a detailed set of requirements for the management of records held by Executive Branch agencies.  The Act allows an aggrieved individual to sue for "actual damages," 5 U. S. C. §552a(g)(4)(A), if the Government intentionally or willfully violates the Act's requirements in such a way as to adversely affect the individual.  Specifically, respondent claimed that the unlawful disclosure to the DOT of his

confidential medical information had caused him mental and emotional distress. The District Court concluded that the Government had violated the Act. But, finding the term "actual damages" ambiguous, the court relied on the sovereign immunity canon, which provides that sovereign immunity waivers must be strictly construed in the Government's favor, to hold that the Act does not authorize the recovery of nonpecuniary damages. Reversing the District Court, the Ninth Circuit concluded that "actual damages" in the Act is not ambiguous and includes damages for mental and emotional distress.

*Held:* The Privacy Act does not unequivocally authorize damages for mental or emotional distress and therefore does not waive the Government's sovereign immunity from liability for such harms. Pp. 4–19.

(a) A waiver of sovereign immunity must be unequivocally expressed in statutory text, see *e.g.*, *Lane* v. *Peña*, 518 U. S. 187, 192, and any ambiguities are to be construed in favor of immunity, *United States* v. *Williams*, 514 U. S. 527, 531. Ambiguity exists if there is a plausible interpretation of the statute that would not allow money damages against the Government. *United States* v. *Nordic Village, Inc.*, 503 U. S. 30, 37. Pp. 5–6.

(b) The term "actual damages" in the Privacy Act is a legal term of art, and Congress, when it employs a term of art, " 'presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken,' " *Molzof* v. *United States*, 502 U. S. 301, 307. Even as a legal term, the precise meaning of "actual damages" is far from clear. Although the term is sometimes understood to include nonpecuniary harm, it has also been used or construed more narrowly to cover damages for only pecuniary harm. Because of the term's chameleon-like quality, it must be considered in the particular context in which it appears. Pp. 6–9.

(c) The Privacy Act serves interests similar to those protected by defamation and privacy torts. Its remedial provision, under which plaintiffs can recover a minimum award of $1,000 if they first prove at least some "actual damages," "parallels" the common-law torts of libel *per quod* and slander, under which plaintiffs can recover "general damages" if they first prove "special damages." *Doe* v. *Chao*, 540 U. S. 614, 625. "Special damages" are limited to actual pecuniary loss, which must be specially pleaded and proved. "General damages" cover nonpecuniary loss and need not be pleaded or proved. This parallel suggests the possibility that Congress intended the term "actual damages" to mean "special damages," thus barring Privacy Act victims from any recovery unless they can first show some actual pecuniary harm. That Congress would choose "actual damages" instead of "special damages" is not without precedent, as the terms have oc-

casionally been used interchangeably. Furthermore, any doubt about the plausibility of construing "actual damages" as special damages in the Privacy Act is put to rest by Congress' deliberate refusal to allow recovery for "general damages." In common-law defamation and privacy cases, special damages is the only category of compensatory damages other than general damages. Because Congress declined to authorize general damages, it is reasonable to infer that Congress intended the term "actual damages" in the Act to mean special damages for proven pecuniary loss. Pp. 9–14.

(d) Although the contrary reading of the Privacy Act accepted by the Ninth Circuit and advanced by respondent is not inconceivable, it is plausible to read the Act as authorizing only damages for economic loss. Because Congress did not speak unequivocally, the Court adopts an interpretation of "actual damages" limited to proven pecuniary harm. To do otherwise would expand the scope of Congress' sovereign immunity waiver beyond what the statutory text clearly requires. P. 14.

(e) Respondent raises several counterarguments: (1) common-law cases often define "actual damages" to mean all compensatory damages; (2) the elimination of "general damages" from the Privacy Act means that there can be no recovery for *presumed* damages, but plaintiffs can still recover for *proven* mental and emotional distress; (3) because some courts have construed "actual damages" in similar statutes to include mental and emotional distress, Congress must have intended "actual damages" in the Act to include mental and emotional distress as well; and (4) precluding nonpecuniary damages would lead to absurd results, thereby frustrating the Act's remedial purpose. None of these arguments overcomes the sovereign immunity canon. Pp. 14–19.

622 F. 3d 1016, reversed and remanded.

ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, and THOMAS, JJ., joined. SOTOMAYOR, J., filed a dissenting opinion, in which GINSBURG and BREYER, JJ., joined. KAGAN, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No. 10–1024

———

## FEDERAL AVIATION ADMINISTRATION, ET AL., PETITIONERS *v.* STANMORE CAWTHON COOPER

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[March 28, 2012]

JUSTICE ALITO delivered the opinion of the Court.

The Privacy Act of 1974, codified in part at 5 U. S. C. §552a, contains a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies. If an agency fails to comply with those requirements "in such a way as to have an adverse effect on an individual," the Act authorizes the individual to bring a civil action against the agency. §552a(g)(1)(D). For violations found to be "intentional or willful," the United States is liable for "actual damages." §552a(g)(4)(A). In this case, we must decide whether the term "actual damages," as used in the Privacy Act, includes damages for mental or emotional distress. We hold that it does not.

I

The Federal Aviation Administration (FAA) requires pilots to obtain a pilot certificate and medical certificate as a precondition for operating an aircraft. 14 CFR §§61.3(a), (c) (2011). Pilots must periodically renew their medical certificates to ensure compliance with FAA medical stand-

ards. See §61.23(d). When applying for renewal, pilots must disclose any illnesses, disabilities, or surgeries they have had, and they must identify any medications they are taking. See 14 CFR pt. 67.

Respondent Stanmore Cooper has been a private pilot since 1964. In 1985, he was diagnosed with a human immunodeficiency virus (HIV) infection and began taking antiretroviral medication. At that time, the FAA did not issue medical certificates to persons with respondent's condition. Knowing that he would not qualify for renewal of his medical certificate, respondent initially grounded himself and chose not to apply. In 1994, however, he applied for and received a medical certificate, but he did so without disclosing his HIV status or his medication. He renewed his certificate in 1998, 2000, 2002, and 2004, each time intentionally withholding information about his condition.

When respondent's health deteriorated in 1995, he applied for long-term disability benefits under Title II of the Social Security Act, 42 U. S. C. §401 *et seq.* To substantiate his claim, he disclosed his HIV status to the Social Security Administration (SSA), which awarded him benefits for the year from August 1995 to August 1996.

In 2002, the Department of Transportation (DOT), the FAA's parent agency, launched a joint criminal investigation with the SSA, known as "Operation Safe Pilot," to identify medically unfit individuals who had obtained FAA certifications to fly. The DOT gave the SSA a list of names and other identifying information of 45,000 licensed pilots in northern California. The SSA then compared the list with its own records of benefit recipients and compiled a spreadsheet, which it gave to the DOT.

The spreadsheet revealed that respondent had a current medical certificate but had also received disability benefits. After reviewing respondent's FAA medical file and his SSA disability file, FAA flight surgeons determined in

2005 that the FAA would not have issued a medical cer-
tificate to respondent had it known his true medical
condition.

When investigators confronted respondent with what
had been discovered, he admitted that he had intention-
ally withheld from the FAA information about his HIV
status and other relevant medical information. Because of
these fraudulent omissions, the FAA revoked respondent's
pilot certificate, and he was indicted on three counts of
making false statements to a Government agency, in
violation of 18 U. S. C. §1001. Respondent ultimately
pleaded guilty to one count of making and delivering a
false official writing, in violation of §1018. He was sen-
tenced to two years of probation and fined $1,000.[1]

Claiming that the FAA, DOT, and SSA (hereinafter
Government) violated the Privacy Act by sharing his
records with one another, respondent filed suit in the
United States District Court for the Northern District of
California. He alleged that the unlawful disclosure to the
DOT of his confidential medical information, including his
HIV status, had caused him "humiliation, embarrassment,
mental anguish, fear of social ostracism, and other severe
emotional distress." App. to Pet. for Cert. 120a. Notably,
he did not allege any pecuniary or economic loss.

The District Court granted summary judgment against
respondent. 816 F. Supp. 2d 778, 781 (2008). The court
concluded that the Government had violated the Privacy
Act and that there was a triable issue of fact as to whether
the violation was intentional or willful.[2] But the court

_____

[1] Respondent eventually applied for recertification as a pilot. After
reviewing respondent's medical records, including information about
his HIV diagnosis and treatment, the FAA reissued his pilot certificate
and medical certificate. Brief for Respondent 5, n. 1.

[2] With certain exceptions, it is unlawful for an agency to disclose a
record to another agency without the written consent of the person to
whom the record pertains. 5 U. S. C. §552a(b). One exception to this

held that respondent could not recover damages because he alleged only mental and emotional harm, not economic loss. Finding that the term "actual damages" is "facially ambiguous," *id.,* at 791, and relying on the sovereign immunity canon, which provides that waivers of sovereign immunity must be strictly construed in favor of the Government, the court concluded that the Act does not authorize the recovery of damages from the Government for nonpecuniary mental or emotional harm.

The United States Court of Appeals for the Ninth Circuit reversed and remanded. 622 F. 3d 1016, 1024 (2010). The court acknowledged that the term "actual damages" is a "'chameleon'" in that "its meaning changes with the specific statute in which it is found." *Id.,* at 1029. But the court nevertheless held that, as used in the Privacy Act, the term includes damages for mental and emotional distress. Looking to what it described as "[i]ntrinsic" and "[e]xtrinsic" sources, *id.,* at 1028, 1031, the court concluded that the meaning of "actual damages" in the Privacy Act is not ambiguous and that "a construction that limits recovery to pecuniary loss" is not "plausible," *id.,* at 1034.

The Government petitioned for rehearing or rehearing en banc, but a divided court denied the petition. *Id.,* at 1019. The Government then petitioned for certiorari, and we granted review. 564 U. S. ___ (2011).

## II

Because respondent seeks to recover monetary compensation from the Government for mental and emotional harm, we must decide whether the civil remedies provi-

_____

nondisclosure requirement applies when the head of an agency makes a written request for law enforcement purposes to the agency that maintains the record. See §552a(b)(7). The agencies in this case could easily have shared respondent's medical records pursuant to the procedures prescribed by the Privacy Act, but the District Court concluded that they failed to do so.

sion of the Privacy Act waives the Government's sovereign immunity with respect to such a recovery.

## A

We have said on many occasions that a waiver of sovereign immunity must be "unequivocally expressed" in statutory text. See, *e.g., Lane* v. *Peña*, 518 U. S. 187, 192 (1996); *United States* v. *Nordic Village, Inc.*, 503 U. S. 30, 33 (1992); *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95 (1990). Legislative history cannot supply a waiver that is not clearly evident from the language of the statute. *Lane, supra*, at 192. Any ambiguities in the statutory language are to be construed in favor of immunity, *United States* v. *Williams*, 514 U. S. 527, 531 (1995), so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires, *Ruckelshaus* v. *Sierra Club*, 463 U. S. 680, 685–686 (1983) (citing *Eastern Transp. Co.* v. *United States*, 272 U. S. 675, 686 (1927)). Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government. *Nordic Village, supra,* at 34, 37.

The question that confronts us here is not whether Congress has consented to be sued for damages under the Privacy Act. That much is clear from the statute, which expressly authorizes recovery from the Government for "actual damages." Rather, the question at issue concerns the *scope* of that waiver. For the same reason that we refuse to enforce a waiver that is not unambiguously expressed in the statute, we also construe any ambiguities in the scope of a waiver in favor of the sovereign. *Lane, supra,* at 192.

Although this canon of interpretation requires an unmistakable statutory expression of congressional intent to waive the Government's immunity, Congress need not state its intent in any particular way. We have never

required that Congress use magic words.  To the contrary, we have observed that the sovereign immunity canon "is a tool for interpreting the law" and that it does not "displac[e] the other traditional tools of statutory construction."  *Richlin Security Service Co.* v. *Chertoff*, 553 U. S. 571, 589 (2008).  What we thus require is that the scope of Congress' waiver be clearly discernable from the statutory text in light of traditional interpretive tools.  If it is not, then we take the interpretation most favorable to the Government.

## B

The civil remedies provision of the Privacy Act provides that, for any "intentional or willful" refusal or failure to comply with the Act, the United States shall be liable for "actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000."  5 U. S. C. §552a(g)(4)(A).  Because Congress did not define "actual damages," respondent urges us to rely on the ordinary meaning of the word "actual" as it is defined in standard general-purpose dictionaries.  But as the Court of Appeals explained, "actual damages" is a legal term of art, 622 F. 3d, at 1028, and it is a "cardinal rule of statutory construction" that, when Congress employs a term of art, "'it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken,'" *Molzof* v. *United States*, 502 U. S. 301, 307 (1992) (quoting *Morissette* v. *United States*, 342 U. S. 246, 263 (1952)).

Even as a legal term, however, the meaning of "actual damages" is far from clear.  The latest edition of Black's Law Dictionary available when Congress enacted the Privacy Act defined "actual damages" as "[r]eal, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or

injury, as opposed on the one hand to 'nominal' damages, and on the other to 'exemplary' or 'punitive' damages." Black's Law Dictionary 467 (rev. 4th ed. 1968). But this general (and notably circular) definition is of little value here because, as the Court of Appeals accurately observed, the precise meaning of the term "changes with the specific statute in which it is found." 622 F. 3d, at 1029.

The term is sometimes understood to include nonpecuniary harm. Take, for instance, some courts' interpretations of the Fair Housing Act (FHA), 42 U. S. C. §3613(c), and the Fair Credit Reporting Act (FCRA), 15 U. S. C. §§1681n, 1681o. A number of courts have construed "actual" damages in the remedial provisions of both statutes to include compensation for mental and emotional distress. See, *e.g., Seaton* v. *Sky Realty Co.*, 491 F. 2d 634, 636–638 (CA7 1974) (authorizing compensatory damages under the FHA, 42 U. S. C. §3612, the predecessor to §3613, for humiliation); *Steele* v. *Title Realty Co.*, 478 F. 2d 380, 384 (CA10 1973) (stating that damages under the FHA "are not limited to out-of-pocket losses but may include an award for emotional distress and humiliation"); *Thompson* v. *San Antonio Retail Merchants Assn.*, 682 F. 2d 509, 513–514 (CA5 1982) *(per curiam)* (explaining that, "[e]ven when there are no out-of-pocket expenses, humiliation and mental distress do constitute recoverable elements of damage" under the FCRA); *Millstone* v. *O'Hanlon Reports, Inc.*, 528 F. 2d 829, 834–835 (CA8 1976) (approving an award of damages under the FCRA for "loss of sleep, nervousness, frustration and mental anguish").

In other contexts, however, the term has been used or construed more narrowly to authorize damages for only pecuniary harm. In the wrongful-death provision of the Federal Tort Claims Act (FTCA), for example, Congress authorized "actual or compensatory damages, measured by the pecuniary injuries resulting from such death." 28 U. S. C. §2674, ¶2. At least one court has defined "actual

damages" in the Copyright Act of 1909, 17 U. S. C. §101(b)
(1970 ed.), as "the extent to which the market value of
a copyrighted work has been injured or destroyed by an
infringement." *Frank Music Corp.* v. *Metro-Goldwyn-
Mayer, Inc.*, 772 F. 2d 505, 512 (CA9 1985); see also
*Mackie* v. *Rieser*, 296 F. 3d 909, 917 (CA9 2002) (holding
that "'hurt feelings' over the nature of the infringement"
have no place in the actual damages calculus). And some
courts have construed "actual damages" in the Securities
Exchange Act of 1934, 15 U. S. C. §78bb(a), to mean "some
form of economic loss." *Ryan* v. *Foster & Marshall, Inc.*,
556 F. 2d 460, 464 (CA9 1977); see also *Osofsky* v. *Zipf*,
645 F. 2d 107, 111 (CA2 1981) (stating that the purpose of
§78bb(a) "is to compensate civil plaintiffs for economic loss
suffered as a result of wrongs committed in violation of the
1934 Act"); *Herpich* v. *Wallace*, 430 F. 2d 792, 810 (CA5
1970) (noting that the "gist" of an action for damages
under the Act is "economic injury").[3]

Because the term "actual damages" has this chameleon-
like quality, we cannot rely on any all-purpose definition
but must consider the particular context in which the term

_____

[3] This narrow usage is reflected in contemporaneous state-court deci-
sions as well. See, *e.g., Reist* v. *Manwiller*, 231 Pa. Super. 444, 449,
n. 4, 332 A. 2d 518, 520, n. 4 (1974) (explaining that recovery for
intentional infliction of emotional distress is allowed "despite the total
absence of physical injury and actual damages"); *Nalder* v. *Crest Corp.*,
93 Idaho 744, 749, 472 P. 2d 310, 315 (1970) (noting that damages for
"mental anguish" due to the wrongful execution of a judgment "are
allowable only as an element of punitive but not of actual damages"). It
is also reflected in post-Privacy Act statutes and judicial decisions. See,
*e.g.,* 17 U. S. C. §1009(d)(1)(A)(ii) (defining "actual damages" in the
Audio Home Recording Act of 1992 as "the royalty payments that
should have been paid"); 18 U. S. C. §2318(e)(3) (2006 ed., Supp. IV)
(calculating "actual damages" for purposes of a counterfeit labeling
statute in terms of financial loss); *Guzman* v. *Western State Bank of
Devils Lake*, 540 F. 2d 948, 953 (CA8 1976) (stating that compensatory
damages in a civil rights suit "can be awarded for emotional and mental
distress even though no actual damages are proven").

appears.[4]

## C

The Privacy Act directs agencies to establish safeguards
to protect individuals against the disclosure of confiden-
tial records "which could result in substantial harm, em-
barrassment, inconvenience, or unfairness to any indi-
vidual on whom information is maintained."  5 U. S. C.
§552a(e)(10); see also §2(b), 88 Stat. 1896 (stating that the
"purpose of this Act is to provide certain safeguards for
an individual against an invasion of personal privacy").
Because the Act serves interests similar to those protected
by defamation and privacy torts, there is good reason to
infer that Congress relied upon those torts in drafting the
Act.

In *Doe* v. *Chao*, 540 U. S. 614 (2004), we held that the
Privacy Act's remedial provision authorizes plaintiffs to
recover a guaranteed minimum award of $1,000 for viola-

─────────────

[4]The dissent criticizes us for noting that the dictionary definition
contains an element of circularity.  The dissent says that the defini-
tion—"'[a]ctual damages' compensate for actual injury"—is "plain
enough."  *Post,* at 3 (opinion of SOTOMAYOR, J.).  But defining "actual"
damages by reference to "actual" injury is hardly helpful when our task
is to determine what Congress meant by "actual."  The dissent's refer-
ence to the current version of Black's Law Dictionary, which provides
that "actual damages" can mean "tangible damages," only highlights
the term's ambiguity.  See Black's Law Dictionary 445 (9th ed. 2009).
If "actual damages" can mean "tangible damages," then it can be
construed not to include intangible harm, like mental and emotional
distress.  Similarly unhelpful is the dissent's citation to a general-
purpose dictionary that defines "actual" as "existing *in fact* or reality"
and "damages" as "compensation or satisfaction *imposed by law* for a
wrong or injury."  Webster's Third New International Dictionary 22,
571 (2002) (emphasis added).  Combining these two lay definitions says
nothing about whether compensation for mental and emotional distress
is *in fact imposed by law*.  The definitions merely beg the question we
are trying to answer.  It comes as little surprise, therefore, that "actual
damages" has taken on different meanings in different statutes, as our
examples amply illustrate.

tions of the Act, but only if they prove at least some
"actual damages." *Id.,* at 620, 627; see §552a(g)(4)(A).
Although we did not address the meaning of "actual dam-
ages," *id.,* at 622, n. 5, 627, n. 12, we observed that the
provision "parallels" the remedial scheme for the common-
law torts of libel *per quod* and slander, under which plain-
tiffs can recover "general damages," but only if they prove
"special harm" (also known as "special damages"), *id.,* at
625; see also 3 Restatement of Torts §575, Comments *a*
and *b* (1938) (hereinafter Restatement); D. Dobbs, Law of
Remedies §7.2, pp. 511–513 (1973) (hereinafter Dobbs).[5]
"Special damages" are limited to actual pecuniary loss,
which must be specially pleaded and proved. 1 D. Hag-
gard, Cooley on Torts §164, p. 580 (4th ed. 1932) (hereinaf-
ter Cooley).[6] "General damages," on the other hand, cover
"loss of reputation, shame, mortification, injury to the
feelings and the like and need not be alleged in detail and
require no proof." *Id.*, §164, at 579.[7]

––––––––––

[5] Libel *per quod* and slander (as opposed to libel and slander *per se*)
apply to a communication that is not defamatory on its face but that is
defamatory when coupled with some other extrinsic fact. Dobbs §7.2, at
512–513.

[6] See also 3 Restatement §575, Comment *b* ("Special harm . . . is harm
of a material and generally of a pecuniary nature"); Dobbs §7.2, at 520
("Special damages in defamation cases mean pecuniary damages, or at
least 'material loss'" (footnote omitted)). Special damages do not
include mental or emotional distress. See 3 Restatement §575, Com-
ment *c* ("The emotional distress caused to the person slandered by his
knowledge that he has been defamed is not special harm and this is so
although the distress results in a serious illness"); Dobbs §7.2, at 520
("Even under the more modern approach, special damages in defama-
tion cases must be economic in nature, and it is not enough that the
plaintiff has suffered harm to reputation, mental anguish or other
dignitary harm, unless he has also suffered the loss of something
having economic value").

[7] See also *id.*, §3.2, at 139 (explaining that noneconomic harms "are
called general damages"); W. Prosser, Law of Torts §112, p. 761 (4th ed.
1971) (noting that "'general' damages may be recovered for the injury
to the plaintiff's reputation, his wounded feelings and humiliation, and

This parallel between the Privacy Act and the common-law torts of libel *per quod* and slander suggests the possibility that Congress intended the term "actual damages" in the Act to mean special damages. The basic idea is that Privacy Act victims, like victims of libel *per quod* or slander, are barred from any recovery unless they can first show actual—that is, pecuniary or material—harm. Upon showing some pecuniary harm, no matter how slight, they can recover the statutory minimum of $1,000, presumably for any unproven harm. That Congress would choose to use the term "actual damages" instead of "special damages" was not without precedent. The terms had occasionally been used interchangeably. See, *e.g., Wetzel* v. *Gulf Oil Corp.*, 455 F. 2d 857, 862 (CA9 1972) (holding that plaintiff could not establish libel *per quod* because he "did not introduce any valid and sufficient evidence of actual damage"); *Electric Furnace Corp.* v. *Deering Milliken Research Corp.*, 325 F. 2d 761, 765 (CA6 1963) (stating that "libel per quod standing alone without proof of actual damages . . . will not support a verdict for the plaintiff"); *M & S Furniture Sales Co.* v. *Edward J. De Bartolo Corp.*, 249 Md. 540, 544, 241 A. 2d 126, 128 (1968) ("In the case of words or conduct actionable only *per quod*, the injurious effect must be established by allegations and proof of special damage and in such cases it is not only necessary to plead and show that the words or actions were defamatory, but it must also appear that such words or conduct caused actual damage"); *Clementson* v. *Minnesota Tribune Co.*, 45 Minn. 303, 47 N. W. 781 (1891) (distinguishing "actual, or, as they are sometimes termed, 'special,' damages" from "general damages—that is, damages not pecu-

––––––––––

resulting physical illness and pain, as well as estimated future damages of the same kind" (footnotes omitted)); 3 Restatement §621, Comment *a* (stating that, in actions for defamation, a plaintiff may recover general damages for "impairment of his reputation or, through loss of reputation, to his other interests").

niary in their nature").[8]

Any doubt about the plausibility of construing "actual damages" in the Privacy Act synonymously with "special damages" is put to rest by Congress' refusal to authorize "general damages." In an uncodified section of the Act, Congress established the Privacy Protection Study Commission to consider, among other things, "whether the Federal Government should be liable for general damages." §5(c)(2)(B)(iii), 88 Stat. 1907, note following 5 U. S. C. §552a, p. 712. As we explained in *Doe*, "Congress left the question of general damages . . . for another day." 540 U. S., at 622. Although the Commission later recommended that general damages be allowed, *ibid.*, n. 4, Congress never amended the Act to include them. For that reason, we held that it was "beyond serious doubt" that general damages are not available for violations of the Privacy Act. *Id.,* at 622.

By authorizing recovery for "actual" but not for "general" damages, Congress made clear that it viewed those terms as mutually exclusive. In actions for defamation and related dignitary torts, two categories of compensatory damages are recoverable: general damages and special damages. Cooley §164, at 579; see also 4 Restatement §867, Comment *d* (1939) (noting that damages for interference with privacy "can be awarded in the same way in which general damages are given for defamation").[9] Be-

_____

[8]The dissent disregards these precedents as the product of careless imprecision. *Post,* at 8, n. 6. But just as we assume that Congress did not act carelessly, we should not be so quick to assume that the courts did. The better explanation for these precedents is not that the courts were careless, but that the term "actual damages" has a varied meaning that, depending on the context, can be limited to compensation for only pecuniary harm.

[9]See also *Moriarty* v. *Lippe*, 162 Conn. 371, 382–383, 294 A. 2d 326, 332–333 (1972) ("Having admittedly alleged or proven no special damages, the plaintiff here is limited to a recovery of general damages . . ."); *Meyerle* v. *Pioneer Publishing Co.*, 45 N. D. 568, 574, 178 N. W.

cause Congress declined to authorize "general damages," we think it likely that Congress intended "actual damages" in the Privacy Act to mean special damages for proven pecuniary loss.

Not surprisingly, this interpretation was accepted by the Privacy Protection Study Commission, an expert body authorized by Congress and highly sensitive to the Act's goals. The Commission understood "actual damages" in the Act to be "a synonym for special damages as that term is used in defamation cases." Personal Privacy in an Information Society: The Report of the Privacy Protection Study Commission 530 (July 1977); see also *ibid.* ("The legislative history and language of the Act suggest that Congress meant to restrict recovery to specific pecuniary losses until the Commission could weigh the propriety of extending the standard of recovery"). Although we are not bound in any way by the Commission's report, we think it confirms the reasonableness of interpreting "actual damages" in the unique context of the Privacy Act as the equivalent of special damages.

––––––––––

792, 794 (1920) *(per curiam)* ("Generally speaking, there are recognized two classes of damages in libel cases, general damages and special damages"); *Winans* v. *Chapman*, 104 Kan. 664, 666, 180 P. 266, 267 (1919) ("Actual damages include both general and special damages"); *Childers* v. *San Jose Mercury Printing & Publishing Co.*, 105 Cal. 284, 288–289, 38 P. 903, 904 (1894) (explaining that special damages, "as a branch of actual damages[,] may be recovered when actual pecuniary loss has been sustained" and that the "remaining branch of actual damages embraces recovery for loss of reputation, shame, mortification, injury to feelings, etc."); see generally Dobbs §7.3, at 531 ("Though the dignitary torts often involve only general damages . . . , they sometimes produce actual pecuniary loss. When this happens, the plaintiff is usually entitled to recover any special damage he can prove . . . "); 1 F. Harper & F. James, Law of Torts §5.30, p. 470 (1956) ("When liability for defamation is established, the defendant, in addition to such 'general' damages as may be assessed by the jury, is also liable for any special damage which he has sustained").

D

We do not claim that the contrary reading of the statute accepted by the Court of Appeals and advanced now by respondent is inconceivable. But because the Privacy Act waives the Federal Government's sovereign immunity, the question we must answer is whether it is plausible to read the statute, as the Government does, to authorize only damages for economic loss. *Nordic Village*, 503 U. S., at 34, 37. When waiving the Government's sovereign immunity, Congress must speak unequivocally. *Lane*, 518 U. S., at 192. Here, we conclude that it did not. As a consequence, we adopt an interpretation of "actual damages" limited to proven pecuniary or economic harm. To do otherwise would expand the scope of Congress' sovereign immunity waiver beyond what the statutory text clearly requires.

III

None of respondent's contrary arguments suffices to overcome the sovereign immunity canon.

A

Respondent notes that the term "actual damages" has often been defined broadly in common-law cases, and in our own, to include all compensatory damages. See Brief for Respondent 18–25. For example, in *Birdsall* v. *Coolidge*, 93 U. S. 64 (1876), a patent infringement case, we observed that "[c]ompensatory damages and actual damages mean the same thing." *Ibid.* And in *Gertz* v. *Robert Welch, Inc.*, 418 U. S. 323 (1974), we wrote that actual injury in the defamation context "is not limited to out-of-pocket loss" and that it customarily includes "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.,* at 350.

These cases and others cited by respondent stand for the

unremarkable point that the term "actual damages" *can* include nonpecuniary loss. But this generic meaning does not establish with the requisite clarity that the Privacy Act, with its distinctive features, authorizes damages for mental and emotional distress. As we already explained, the term "actual damages" takes on different meanings in different contexts.

B

Respondent's stronger argument is that the exclusion of "general damages" from the statute simply means that there can be no recovery for presumed damages. Privacy Act victims can still recover for mental and emotional distress, says respondent, so long as it is proved. See Brief for Respondent 54–56.[10]

This argument is flawed because it suggests that *proven* mental and emotional distress does not count as general damages. The term "general damages" is not limited to compensation for unproven injuries; it includes compensation for proven injuries as well. See 3 Restatement §621, Comment *a* (noting that general damages compensate for "harm which . . . is proved, or, in the absence of proof, is assumed to have caused to [the plaintiff's] reputation"). To be sure, specific proof of emotional harm is not required to recover general damages for dignitary torts. Dobbs §7.3, at 529. But it does not follow that general damages cannot be recovered for emotional harm that is actually proved.

Aside from the fact that general damages need not be proved, what distinguishes those damages, whether proved or not, from the only other category of compensatory damages available in the relevant common-law suits is the *type* of harm. In defamation and privacy cases, "the affront to the plaintiff's dignity and the emotional harm

─────────

[10] The dissent advances the same argument. See *post,* at 9–11.

done" are "called general damages, to distinguish them
from proof of actual economic harm," which is called "spe-
cial damages." *Id.*, §3.2, at 139; see also *supra,* at 10, 12–
13, and nn. 6, 7, 9. Therefore, the converse of general
damages is special damages, not all proven damages, as
respondent would have it. Because Congress removed
"general damages" from the Act's remedial provision, it is
reasonable to infer that Congress foreclosed recovery for
nonpecuniary harm, even if such harm can be proved, and
instead waived the Government's sovereign immunity only
with respect to harm compensable as special damages.

C

Looking beyond the Privacy Act's text, respondent
points to the use of the term "actual" damages in the
remedial provisions of the FHA, 42 U. S. C. §3613(c), and
the FCRA, 15 U. S. C. §§1681n, 1681*o*. As previously
mentioned, courts have held that "actual" damages within
the meaning of these statutes include compensation for
mental and emotional distress. *Supra*, at 7. Citing the
rule of construction that Congress intends the same lan-
guage in similar statutes to have the same meaning, see
*Northcross* v. *Board of Ed. of Memphis City Schools*, 412
U. S. 427, 428 (1973) *(per curiam)*, respondent argues that
the Privacy Act should also be interpreted as authorizing
damages for mental and emotional distress. See Brief for
Respondent 25–32.

Assuming for the sake of argument that these lower
court decisions are correct, they provide only weak support
for respondent's argument here. Since the term "actual
damages" can mean different things in different contexts,
statutes other than the Privacy Act provide only limited
interpretive aid, and that is especially true here. Neither
the FHA nor the FCRA contains text that precisely mir-

rors the Privacy Act.[11]  In neither of those statutes did Congress specifically decline to authorize recovery for general damages as it did in the Privacy Act. *Supra,* at 12–13. And most importantly, none of the lower court cases interpreting the statutes, which respondent has cited, see Brief for Respondent 29–31, involves the sovereign immunity canon.

Respondent also points to the FTCA, but the FTCA's general liability provision does not even use the term "actual damages."  It instead provides that the "United States shall be liable" for certain tort claims "in the same manner and to the same extent as a private individual" under relevant state law.  28 U. S. C. §2674, ¶1.  For that reason alone, the FTCA's general liability provision is not a reliable source for interpreting the term "actual damages" in the Privacy Act.  Nor does the FTCA's wrongful-death provision—which authorizes "actual or compensatory damages, measured by the pecuniary injuries resulting from such death," §2674, ¶2—prove that Congress understood the term "actual damages" in the Privacy Act to include nonpecuniary mental and emotional harm.  To the contrary, it proves that actual damages can be understood to entail only pecuniary harm depending on the context. Because the FTCA, like the FHA and FCRA, does not share the same text or design as the Privacy Act, it is not a fitting analog for construing the Act.

_____

[11] Compare 42 U. S. C. §3613(c)(1) (stating that "the court may award to the plaintiff actual and punitive damages"); 15 U. S. C. §1681n(a)(1) (authorizing "(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or (B) . . . actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater"); §1681*o*(a)(1) (authorizing "any actual damages sustained by the consumer as a result of the failure") with 5 U. S. C. §552a(g)(4)(A) (authorizing "actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000").

D

Finally, respondent argues that excluding damages for mental and emotional harm would lead to absurd results. Persons suffering relatively minor pecuniary loss would be entitled to recover $1,000, while others suffering only severe and debilitating mental or emotional distress would get nothing. See Brief for Respondent 33–35.

Contrary to respondent's suggestion, however, there is nothing absurd about a scheme that limits the Government's Privacy Act liability to harm that can be substantiated by proof of tangible economic loss. Respondent insists that such a scheme would frustrate the Privacy Act's remedial purpose, but that ignores the fact that, by deliberately refusing to authorize general damages, Congress intended to cabin relief, not to maximize it.[12]

--------

[12] Despite its rhetoric, the dissent does not dispute most of the steps in our analysis. For example, although the dissent belittles the sovereign immunity canon, the dissent does not call for its abandonment. See *post,* at 2–3. Nor does the dissent point out any error in our understanding of the canon's meaning. See *ibid.* The dissent acknowledges that statutes and judicial opinions sometimes use the term "actual damages" to mean pecuniary harm, see *post,* at 5, and that determining its meaning in a particular statute requires consideration of context, see *ibid.* In addition, the dissent concedes—as it must in light of our reasoning in *Doe* v. *Chao*, 540 U. S. 614 (2004)—that the common law of defamation has relevance in construing the term "actual damages" in the Privacy Act. See *post,* at 7–9.

The dissent's argument thus boils down to this: The text and purpose of the Privacy Act make it clear beyond any reasonable dispute that the term "actual damages," as used in the Act, means compensatory damages for all proven harm and not just damages for pecuniary harm. The dissent reasons that, because the Act seeks to prevent pecuniary and nonpecuniary harm, Congress must have intended to authorize the recovery of money damages from the Federal Government for both types of harm. This inference is plausible, but it surely is not unavoidable. The Act deters violations of its substantive provisions in other ways—for instance, by permitting recovery for economic injury; by imposing criminal sanctions for some violations, see 5 U. S. C. §552a(i); and possibly by allowing for injunctive relief under the Administrative

*      *      *

In sum, applying traditional rules of construction, we hold that the Privacy Act does not unequivocally authorize an award of damages for mental or emotional distress. Accordingly, the Act does not waive the Federal Government's sovereign immunity from liability for such harms. We therefore reverse the judgment of the United States Court of Appeals for the Ninth Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KAGAN took no part in the consideration or decision of this case.

———————

Procedure Act (APA), 5 U. S. C. §§702, 706; see *Doe, supra,* at 619, n. 1 (noting that the absence of equitable relief in suits under §§552a(g)(1)(C) or (D) may be explained by the availability of such relief under the APA).

# SUPREME COURT OF THE UNITED STATES

_____

No. 10–1024

_____

## FEDERAL AVIATION ADMINISTRATION, ET AL., PETITIONERS _v._ STANMORE CAWTHON COOPER

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[March 28, 2012]

JUSTICE SOTOMAYOR, with whom JUSTICE GINSBURG and JUSTICE BREYER join, dissenting.

Congress enacted the Privacy Act of 1974 for the stated purpose of safeguarding individual privacy against Government invasion. To that end, the Act provides a civil remedy entitling individuals adversely affected by certain agency misconduct to recover "actual damages" sustained as a result of the unlawful action.

Today the Court holds that "actual damages" is limited to pecuniary loss. Consequently, individuals can no longer recover what our precedents and common sense understand to be the primary, and often only, damages sustained as a result of an invasion of privacy, namely mental or emotional distress. That result is at odds with the text, structure, and drafting history of the Act. And it cripples the Act's core purpose of redressing and deterring violations of privacy interests. I respectfully dissent.

## I

The majority concludes that "actual damages" in the civil-remedies provision of the Privacy Act allows recovery for pecuniary loss alone. But it concedes that its interpretation is not compelled by the plain text of the statute or otherwise required by any other traditional tool of statu-

tory interpretation.  And it candidly acknowledges that a
contrary reading is not "inconceivable." *Ante,* at 14.  Yet be-
cause it considers its reading of "actual damages" to be
"plausible," the majority contends that the canon of sover-
eign immunity requires adoption of an interpretation most
favorable to the Government.  *Ibid.*

   The canon simply cannot bear the weight the majority
ascribes it.  "The sovereign immunity canon is just that—a
canon of construction.  It is a tool for interpreting the law,
and we have never held that it displaces the other tra-
ditional tools of statutory construction." *Richlin Security
Service Co.* v. *Chertoff*, 553 U. S. 571, 589 (2008) (opinion
of ALITO, J.).  Here, traditional tools of statutory construc-
tion—the statute's text, structure, drafting history, and
purpose—provide a clear answer: The term "actual dam-
ages" permits recovery for all injuries established by
competent evidence in the record, whether pecuniary or
nonpecuniary, and so encompasses damages for mental
and emotional distress.  There is no need to seek refuge in
a canon of construction, see *id.,* at 589–590 (declining to
rely on canon as there is "no ambiguity left for us to con-
strue" after application of "traditional tools of statutory
interpretation and considerations of *stare decisis*"), much
less one that has been used so haphazardly in the Court's
history, see *United States* v. *Nordic Village, Inc.*, 503 U. S.
30, 42 (1992) (Stevens, J., dissenting) (canon is "nothing
but a judge-made rule that is sometimes favored and
sometimes disfavored") (collecting cases).

   It bears emphasis that we have said repeatedly that,
while "we should not take it upon ourselves to *extend*
the waiver [of sovereign immunity] beyond that which
Congress intended," "[n]either . . . should we assume the
authority to *narrow* the waiver that Congress intended."
*United States* v. *Kubrick*, 444 U. S. 111, 117–118 (1979)
(emphasis added).  See also, *e.g., Block* v. *Neal*, 460 U. S.
289, 298 (1983) ("The exemption of the sovereign from suit

involves hardship enough where consent has been with-
held. We are not to add to its rigor by refinement of con-
struction where consent has been announced" (internal
quotation marks omitted)). In the Privacy Act, Congress
expressly authorized recovery of "actual damages" for
certain intentional or willful agency misconduct. The
Court should not "as a self-constituted guardian of the
Treasury import immunity back into a statute designed to
limit it." *Indian Towing Co.* v. *United States*, 350 U. S. 61,
69 (1955).

## II

### A

"In a statutory construction case, the beginning point
must be the language of the statute, and when a statute
speaks with clarity to an issue judicial inquiry into the
statute's meaning, in all but the most extraordinary cir-
cumstance, is finished." *Estate of Cowart* v. *Nicklos Drill-
ing Co.*, 505 U. S. 469, 475 (1992). The language of the
civil-remedies provision of the Privacy Act is clear.

At the time Congress drafted the Act, Black's Law Dic-
tionary defined "actual damages" as "[r]eal, substantial
and just damages, or the amount awarded to a complain-
ant in compensation for his actual and real loss or in-
jury" and as "[s]ynonymous with 'compensatory damages.'"
Black's Law Dictionary 467 (rev. 4th ed. 1968) (hereinafter
Black's). The majority claims this is a "general" and "no-
tably circular" definition, *ante*, at 7, but it is unclear why.
The definition is plain enough: "Actual damages" compen-
sate for actual injury, and thus the term is synonymous
with compensatory damages. See Black's 467 (defining
"compensatory damages" as damages that "will compen-
sate the injured party for the injury sustained, and noth-
ing more; such as will simply make good or replace the

loss caused by the wrong or injury").[1]  There is nothing circular about that definition.[2]  It is the definition this Court adopted more than a century ago when we recognized that "[c]ompensatory damages and actual damages mean the same thing; that is, that the damages shall be the result of the injury alleged and proved, and that the amount awarded shall be precisely commensurate with the injury suffered."  *Birdsall* v. *Coolidge*, 93 U. S. 64 (1876).  It is the definition embraced in current legal dictionaries.  See Black's 445 (9th ed. 2009) (defining "actual damages" as "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses.—Also termed compensatory damages; tangible damages; real damages" (italics omitted)).  And it is the definition that accords with the plain and ordinary meaning of the term.  See Webster's Third New International Dictionary 22, 571 (2002) (defining "actual" as "existing in fact or reality" and "damages" as "compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right*).*  Thus, both as a term of art and in its plain meaning, "actual damages" connotes compensation for proven injuries or

—————

[1] Black's Law Dictionary also defined "actual damages" as synonymous with "general damages."  Black's 467.  While "general damages" has a specialized meaning of presumed damages in libel and slander cases, see n. 4, *infra*, it more generally can mean damages that "did in fact result from the wrong, directly and proximately."  Black's 468.

[2] The majority declares the definition circular because "defining 'actual' damages by reference to 'actual' injury is hardly helpful when our task is to determine what Congress meant by 'actual.'"  *Ante,* at 9, n. 4.  "Actual injury," however, is far from an unhelpful reference.  This Court already has recognized in the defamation context that "actual injury is not limited to out-of-pocket loss."  *Gertz* v. *Robert Welch, Inc.*, 418 U. S. 323, 350 (1974).  That accords with the definitions of the terms.  See Black's 53, 924 (defining "actual" as "[r]eal; substantial; existing presently in act, having a valid objective existence as opposed to that which is merely theoretical or possible," and "injury" as "[a]ny wrong or damage done to another").

losses. Nothing in the use of that phrase indicates proven injuries need be pecuniary in nature.

The majority discards all this on the asserted ground that "the precise meaning of the term 'changes with the specific statute in which it is found.'" *Ante,* at 7 (quoting 622 F. 3d 1016, 1029 (CA9 2010)). Context, of course, is relevant to statutory interpretation; it may provide clues that Congress did not employ a word or phrase in its ordinary meaning. That well-established interpretive rule cannot, however, render irrelevant—as the majority would have it—the ordinary meaning of "actual damages."

Moreover, the authority the majority cites for its claim that "actual damages" has no fixed meaning undermines—rather than supports—its holding. Each cited authority involves either a statute in which Congress expressly directed that compensation be measured in strictly economic terms, or else a statute (*e.g.*, the Copyright Act of 1909) in which economic loss is the natural and probable consequence of a violation of the defined legal interest.[3] Neither factor is present here. Notably absent from the Privacy Act is any provision so much as hinting that "actual damages" should be limited to economic loss. And while "' "hurt feelings" over the nature of the [copyright] infringement'" may "have no place in the actual damages calculus" under the Copyright Act of 1909, *ante,* at 8 (quoting in parenthetical *Mackie* v. *Rieser*, 296 F. 3d 909, 917 (CA9 2002)), the majority provides no basis for concluding that "hurt feelings" are equally invalid in an Act concerned with safeguarding individual privacy. Thus, while context is no doubt relevant, the majority's cited authority does little to help its cause in the stated context of this statute.

---

[3] See 28 U. S. C. §2674; 17 U. S. C. §1009(d)(1); 18 U. S. C. §2318(e)(3) (2006 ed., Supp. IV); 17 U. S. C. §101(b) (1970 ed.); 15 U. S. C. §78bb(a) (2006 ed., Supp. IV).

## B

Indeed, the relevant statutory context—the substantive provisions whose breach may trigger suit under the civil-remedies provision—only reinforces the ordinary meaning of "actual damages."

Congress established substantive duties in the Act that are expressly designed to prevent agency conduct resulting in intangible harms to the individual. The Act requires agencies to "establish appropriate administrative, technical, and physical safeguards" to ensure against security breaches that could result in "substantial harm, embarrassment, inconvenience, or unfairness to any individual." 5 U. S. C. §552a(e)(10). It also requires agencies to "maintain all records" used in making a determination about an individual in a manner that is "reasonably necessary to assure fairness to the individual in the determination." §552a(e)(5). Thus an agency violates the terms of the Act if it fails, *e.g.,* to maintain safeguards protecting against "embarrassment"; there is no additional requirement that the pocketbook be implicated. An agency's intentional or willful violation of those duties triggers liability for "actual damages" under §552a(g)(4) in the event of an adverse impact. §§552a(g)(1)(C)–(D), (g)(4).

Adopting a reading of "actual damages" that permits recovery for pecuniary loss alone creates a disconnect between the Act's substantive and remedial provisions. It allows a swath of Government violations to go unremedied: A federal agency could intentionally or willfully forgo establishing safeguards to protect against embarrassment and no successful private action could be taken against it for the harm Congress identified. Only an interpretation of "actual damages" that permits recovery for nonpecuniary harms harmonizes the Act's substantive and remedial provisions. *Robinson* v. *Shell Oil Co.*, 519 U. S. 337, 341

(1997) (statutory interpretation must consider "the broader context of the statute as a whole").[4]

The majority draws a different conclusion from the substantive provisions of the Privacy Act. It (correctly) infers from them that the Act "serves interests similar to those protected by defamation and privacy torts." *Ante*, at 9. It then points to our observation in *Doe* v. *Chao*, 540 U. S. 614, 625 (2004), that the Act's civil-remedies provision "parallels" the remedial scheme for the common-law torts of defamation *per quod*, which permitted recovery of "general damages" (*i.e.*, presumed damages) only if a plaintiff first establishes "special damages" (*i.e.*, monetary loss).[5] *Ante*, at 10. That "parallel," the majority concludes, "suggests the possibility that Congress intended the term 'actual damages' in the Act to mean special damages." *Ante*, at 11.

The majority reads too much into *Doe*. At issue in that

––––––––

[4] It bears noting that the Privacy Act does not authorize injunctive relief when a suit is maintained under 5 U. S. C. §§552a(g)(1)(C) and (D). Rather, injunctive relief is available under the Act only for a limited category of suits: suits to amend a record and suits for access to a record. See §§552a(g)(2), (g)(3). Thus an individual who, like petitioner, brings suit under subparagraph (g)(1)(C) or (D) for an intentional or willful violation of the Act will be without a remedy under the majority's reading of "actual damages."

[5] As the majority notes, "general damages" at common law refers to damages "presumed" to accrue from the violation of the legally protected right. No proof of actual injury was required. See D. Dobbs, Law of Remedies §7.2, p. 513 (1973) (hereinafter Dobbs); *Doe*, 540 U. S., at 621. "Special damages," in contrast, "meant monetary loss." Dobbs §7.2, at 512; *Doe*, 540 U. S., at 625. Common-law defamation actions falling within the rubric of defamation *per se* allowed successful plaintiffs to recover "general damages." See Dobbs §7.2, at 513; *Doe*, 540 U. S., at 621. This stood in contrast to actions sounding in defamation *per quod*, which permitted recovery only if the plaintiff established "special damages." See Dobbs, §7.2 at 512; *Doe*, 540 U. S., at 625. Even in defamation *per quod* cases, a plaintiff could recover nonpecuniary injuries upon establishing some pecuniary loss. See Dobbs §7.2, at 521; *Doe*, 540 U. S., at 625. See also *ante*, at 10.

case was the question whether the Act's civil-suit provision authorized recovery of a guaranteed minimum award of $1,000 absent proof of some "actual damages." The Court answered in the negative, and in the course of doing so replied to petitioner's argument that there was "something peculiar in offering some guaranteed damages . . . only to those plaintiffs who can demonstrate actual damages." 540 U. S., at 625. Although the Court cited the Act's parallels to defamation *per quod* actions in noting that nothing was "peculiar" about the Act's remedial scheme, *Doe* did not take the further step of deciding that "actual damages" means economic loss alone. Indeed, it expressly reserved that question. *Id.,* at 627, n. 12.

The majority, moreover, is wrong to conclude that the Act's parallels with defamation *per quod* actions suggest Congress intended "actual damages" to mean "special damages." Quite the opposite. The fact that Congress "would probably have known about" defamation *per quod* actions, *id.*, at 625, makes it all the more significant that Congress did *not* write "special damages" in the civil-remedies provision. This Court is typically not in the business of substituting words we think Congress intended to use for words Congress in fact used. Yet that is precisely what the majority does when it rewrites "actual damages" to mean "special damages."[6] In sum, the statutory context, and in particular the Act's substantive provisions, confirms the ordinary meaning of "actual damages." Although the Act shares parallels with common-law defamation torts, such analogies do not warrant a reading of

––––––––––

[6] The majority cites a collection of lower court opinions that have used "actual damages" in place of "special damages" to note that Congress would not have been alone in using the former term to refer to the latter. *Ante,* at 11–12. But that a handful of lower courts on occasion have been imprecise in their terminology provides no basis to assume the Legislature has been equally careless in the text of a statute.

the phrase that is at odds with the statute's plain text.[7]

## C

An uncodified provision of the Act, tied to the Act's drafting history, also reinforces the ordinary meaning of "actual damages." As the majority notes, prior to reconciliation, the Senate and House bills contained civil-remedies provisions that were different in a critical respect: The Senate bill allowed for the recovery of "actual and general damages," whereas the House bill allowed for the recovery of "actual damages" alone.[8] In the reconciliation process, the provision for "general damages" was dropped and an uncodified section of the Act was amended to require the newly established Privacy Protection Study Commission to consider, among its other jobs, "whether the Federal Government should be liable for general damages incurred by an individual as the result of a willful or intentional violation of the provisions of sections 552a(g)(1)(C) or (D)." §5(c)(2)(B)(iii), 88 Stat. 1907; see also *Doe*, 540 U. S., at 622.

As the Court explained in *Doe*, "[t]he deletion of 'general damages' from the bill is fairly seen . . . as a deliberate elimination of any possibility of imputing harm and awarding presumed damages." *Id.*, at 623; see also *id.,* at

_____

[7] There is yet another flaw in the majority's reasoning. At common law a plaintiff who successfully established "special damages" in an action for defamation *per quod* could proceed to recover damages for emotional and mental distress. See *ante*, at 10; n. 5, *supra*. If "Congress intended the term 'actual damages' in the Act to mean special damages," *ante*, at 11, then an individual who successfully establishes some pecuniary loss from a violation of the Act—presumably as trivial as the cost of a bottle of Tylenol—should be permitted to recover for emotional and mental distress. The majority, of course, does not accept that result, and its piecemeal embrace of the common law undermines its assertion that Congress intended "special damages" in place of "actual damages."

[8] See S. 3418, 93d Cong., 2d Sess., §303(c)(1) (1974); H. R. 16373, 93d Cong., 2d Sess., §3 (1974).

622, n. 5 ("Congress explicitly rejected the proposal to make presumed damages available for Privacy Act violations"). The elimination of presumed damages from the bill can only reasonably imply that what Congress left behind—"actual damages"—comprised damages that are not presumed, *i.e.,* damages proven by competent evidence in the record. See *Gertz* v. *Robert Welch, Inc.*, 418 U. S. 323, 349–350 (1974) (distinguishing in defamation context between presumed damages and damages for actual injuries sustained by competent evidence in the record, which include "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering"); *Carey* v. *Piphus*, 435 U. S. 247, 262–264 (1978) (distinguishing between presumed damages and proven damages for mental and emotional distress).

Rather than view the deletion of general damages (presumed damages) as leaving the converse (proven damages), the majority supposes that the deletion leaves only a subset of proven damages—those of an economic nature, *i.e.*, "special damages." Once again, however, the majority's insistence that "Congress intended 'actual damages' in the Privacy Act to mean special damages for proven pecuniary loss," *ante,* at 13, finds no basis in the statutory text, see *supra,* at 8. And its response to the conclusion that Congress retained recovery for proven damages when it eliminated presumed damages is singularly unsatisfying. The majority declares such a conclusion "flawed" because "general damages" "includes compensation for proven injuries as well," so that "what distinguishes [general] damages, whether proved or not, from the only other category of compensatory damages available in the relevant common-law suits is the *type* of harm" the term encompasses—which the majority takes to be emotional harm alone. *Ante*, at 15–16. That assertion is defective on two scores. *First*, a plaintiff's ability to present proof of injury in a defamation *per se* action (and to recover for

such proven injury) does not alter the definition of "general damages," which we already explained in *Doe* means "presumed damages." 540 U. S., at 621; see also *id.,* at 623; n. 5, *supra. Second*, "general damages" is not limited to a "type" of harm. The majority's contrary assertion that the term permits recovery only for emotional "types" of harm overlooks the fact that "general damages are partly based on the belief that the plaintiff will suffer unprovable *pecuniary losses*." Dobbs §7.2, at 514 (emphasis added). It thus was established at common law that in a defamation *per se* action, "the plaintiff is usually free to prove whatever actual pecuniary loss he can," and "the jury may be permitted to view the actual pecuniary loss proven as the tip of the iceberg, assume that there is still more unproven, and award damage accordingly." *Ibid.*

At its core, the majority opinion relies on the following syllogism: The common law employed two terms of art in defamation actions. Because Congress excluded recovery for "general damages," it must have meant to retain recovery only for "special damages." That syllogism, of course, ignores that there *is* another category of damages. It is the very category Congress used in the text of the Privacy Act: "Actual damages." However much Congress may have drawn "parallels," *ante*, at 10, between the Act and the common-law tort of defamation, the fact remains that Congress expressly choose not to use the words "special damages."[9]

### D

I turn finally to the statute's purpose, for "[a]s in all cases of statutory interpretation, our task is to interpret

---

[9] The majority cites the conclusions of the Privacy Protection Study Commission in support of its interpretation of "actual damages." The majority rightfully does not claim this piece of postenactment, extratextual material is due any deference; nor do I find its unelaborated conclusions persuasive.

the words of th[e] statut[e] in light of the purposes Congress sought to serve." *Chapman* v. *Houston Welfare Rights Organization*, 441 U. S. 600, 608 (1979); see also *Dolan* v. *Postal Service*, 546 U. S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis").  The purposes of the Privacy Act could not be more explicit, and they are consistent with interpreting "actual damages" according to its ordinary meaning.

"The historical context of the Act is important to an understanding of its remedial purposes.  In 1974, Congress was concerned with curbing the illegal surveillance and investigation of individuals by federal agencies that had been exposed during the Watergate scandal."  Dept. of Justice, Office of Privacy and Civil Liberties, Overview of the Privacy Act 4 (2010).  In particular, Congress recognized that "the increasing use of computers and sophisticated information technology . . . has greatly magnified the harm to individual privacy that can occur from any collection, maintenance, use, or dissemination of personal information."  §2(a), 88 Stat. 1896.  Identifying the right to privacy as "a personal and fundamental right," Congress found it "necessary and proper" to enact the Privacy Act "in order to protect the privacy of individuals identified in information systems maintained by Federal agencies." *Ibid.*

Congress explained that the "purpose of this Act is to provide certain safeguards for an individual against an invasion of personal privacy by requiring Federal agencies, except as otherwise provided by law, to," *inter alia*, "be subject to civil suit for *any damages* which occur as a result of willful or intentional action which violates any individual's rights under this Act."  §2(b)(6), *ibid.* (emphasis added).  That statement is an explicit reference to suits

brought under §552a(g)(4); no other provision speaks to a civil suit based on "willful or intentional" agency misconduct. It signals unmistakably congressional recognition that the civil-remedies provision is integral to realizing the Act's purposes.

Reading "actual damages" to permit recovery for any injury established by competent evidence in the record— pecuniary or not—best effectuates the statute's basic purpose. Although some privacy invasions no doubt result in economic loss, we have recognized time and again that the primary form of injuries is nonpecuniary, and includes mental distress and personal humiliation. See *Time, Inc.* v. *Hill*, 385 U. S. 374, 385, n. 9 (1967) ("In the 'right of privacy' cases the primary damage is the mental distress"); see also *Gertz*, 418 U. S., at 350 ("[A]ctual injury" in defamatory falsehood cases "is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering"). Accord, 2 Dobbs §7.1.(1), at 259 (2d ed. 1993) (privacy is a dignitary interest, and "in a great many of the cases" in which the interest is invaded "the only harm is the affront to the plaintiff's dignity as a human being, the damage to his self-image, and the resulting mental distress"). That accords with common sense.

In interpreting the civil-remedies provision, we must not forget Congress enacted the Privacy Act to protect privacy. The majority's reading of "actual damages" renders the remedial provision impotent in the face of concededly unlawful agency action whenever the injury is solely nonpecuniary. That result is patently at odds with Congress' stated purpose. The majority, however, does not grapple with the ramifications of its opinion. It acknowledges the suggestion that its holding leads to absurd results as it allows individuals suffering relatively minor

pecuniary losses to recover $1,000 while others suffering severe mental anguish to recover nothing. But it concludes that "there is nothing absurd about a scheme that limits the Government's Privacy Act liability to harm that can be substantiated by proof of tangible economic loss." *Ante,* at 18. Perhaps; it is certainly within Congress' prerogative to enact the statute the majority envisions, namely one that seeks to safeguard against invasions of privacy without remedying the primary harm that results from invasions of privacy. The problem for the majority is that one looks in vain for *any* indication in the text of the statute before us that Congress intended such a result. Nowhere in the Privacy Act does Congress so much as hint that it views a $5 hit to the pocketbook as more worthy of remedy than debilitating mental distress, and the majority's contrary assumption discounts the gravity of emotional harm caused by an invasion of the personal integrity that privacy protects.

\* \* \*

After today, no matter how debilitating and substantial the resulting mental anguish, an individual harmed by a federal agency's intentional or willful violation of the Privacy Act will be left without a remedy unless he or she is able to prove pecuniary harm. That is not the result Congress intended when it enacted an Act with the express purpose of safeguarding individual privacy against Government invasion. And it is not a result remotely suggested by anything in the text, structure, or history of the Act. For those reasons, I respectfully dissent.