# United States Court of Appeals
# for the Federal Circuit

_____

**RICHARD ERICKSON,**

*Petitioner,*

**v.**

**UNITED STATES POSTAL SERVICE,**

*Respondent.*

_____

2008-3216, 2010-3096

_____

Petitions for review of the Merit Systems Protection Board in Nos. AT3443070016-1-2 and AT3443070016-M-1.

_____

ON MOTION

_____

MATTHEW D. ESTES, Tully Rinckey PLLC of Washington, DC, filed an application for attorney's fees for petitioner.

TARA K. HOGAN Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, filed a response to the petition for respondent. With her on the response were STUART F. DELERY, Assistant Attorney General, BRYANT G. SNEE, Acting Director, and FRANKLIN E. WHITE, Assistant Director.

_____

Before BRYSON and LINN, *Circuit Judges.*[*]

BRYSON, *Circuit Judge.*

The petitioner in this case, Richard Erickson, has filed an application for attorney fees in connection with his two appeals to this court. In his application, he sets forth four grounds for the recovery of attorney fees and expenses. We hold that none of the four grounds provides a legal basis for Mr. Erickson to receive attorney fees in this case, and we therefore deny the application.

I

Mr. Erickson, a U.S. Postal Service employee from 1988 to 2000, was a member of the Army National Guard Reserve throughout that period. During the 12 years of his employment, he was absent from his Postal Service position for lengthy periods of time while he was on active duty with the National Guard. Between 1991 and 1995 he was absent for a total of more than 22 months, and between 1996 and 2000, he worked at the Postal Service for only four days. In January 2000, during one of Mr. Erickson's periods of active duty, the Postal Service inquired whether he intended to return to his Postal Service job. Mr. Erickson replied that he would not report back to work with the agency until he completed his current tour of duty in September 2001. He stated at that time that he preferred military service to working for the Postal Service. Shortly thereafter, the Postal Service removed him for excessive use of military leave. *Erickson v. U.S. Postal Serv. (Erickson I)*, 571 F.3d 1364, 1366-67 (Fed. Cir. 2009).

---

[*]    Randall R. Rader, who retired from the position of Circuit Judge on June 30, 2014, was a member of the panel but did not participate in this decision.

Following his removal from the Postal Service, Mr. Erickson re-enlisted with the National Guard. He remained on active military duty until December 31, 2005. In September 2006, he filed an appeal with the Merit Systems Protection Board alleging that the Postal Service had violated his rights under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") by removing him from his position based on his military service. The Board rejected his claim under USERRA's reemployment rights provision, 38 U.S.C. § 4312, holding that he had not made a timely request for reemployment with the agency. The Board also rejected his claim under USERRA's antidiscrimination provision, 38 U.S.C. § 4311, holding that Mr. Erickson's military service was not a motivating factor in the agency's decision to remove him. The Board also held that Mr. Erickson had forfeited his reemployment rights because at the time of his appeal his cumulative absence from the agency exceeded the five-year limit set by USERRA. *Erickson I*, 571 F.3d at 1367.

On Mr. Erickson's appeal, this court affirmed the Board's decision with respect to his reemployment claim, but reversed with respect to his discrimination claim. As to his discrimination claim, the court held that the evidence was clear that Mr. Erickson's removal was attributable to his military service and that at the time of his removal he had not been absent from his position with the Postal Service for a total of five years. The court remanded the case to the Board to resolve the remaining question whether Mr. Erickson had waived his rights under USERRA by abandoning his civilian career in favor of a career in the military. *Erickson I*, 571 F.3d at 1367-72.

On remand, the Board found that Mr. Erickson had waived his USERRA rights by abandoning his civilian career. Mr. Erickson again appealed to this court, arguing that the Board's findings in that regard were not

supported by substantial evidence. This court agreed with Mr. Erickson that the Board's findings were not supported by substantial evidence. Accordingly, the court remanded the case to the Board for further proceedings on Mr. Erickson's claim. *Erickson v. U.S. Postal Serv. (Erickson II)*, 636 F.3d 1353 (Fed. Cir. 2011).

In the second remand proceeding, the Board ruled in favor of Mr. Erickson on his discrimination claim. It granted him reinstatement with back wages and benefits as of the date of his removal. Mr. Erickson has now filed an application here seeking fees for his attorneys' work in the two appeals he took to this court.

## II

In support of his application, Mr. Erickson makes four arguments. First, he contends that the Merit Systems Protection Board is authorized to grant fees for work in this court under USERRA's attorney fee statute, 38 U.S.C. § 4324(c)(4). Second, he argues that USERRA authorizes this court to grant attorney fees for work done on appeal, although there is no specific statute that contains such authorization. Third, he argues that he is entitled to an attorney fee award under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Fourth, he seeks an attorney fee award under the attorney fee provision of the Back Pay Act, 5 U.S.C. § 5596(b)(1)(A)(ii). We conclude that none of the four grounds on which Mr. Erickson relies provides a basis for a fee award for work done in this court.

### A. The Merit Systems Protection Board Is Not Authorized to Award Fees Incurred During Judicial Review Under USERRA

Mr. Erickson's first argument is that the Merit Systems Protection Board has statutory authority to make a comprehensive fee award under USERRA, which would

include not only fees for work done before the Board, but also fees for work done before this court.

The statute on which Mr. Erickson relies, 38 U.S.C. § 4324(c)(4), authorizes the Board, in its discretion, to award attorney fees to a successful USERRA claimant. Although the statutory language does not expressly rule out a fee award for work done before a reviewing court, the focus of the statute is on work done before the Board. Thus, the statute provides that a fee award is authorized only if "the Board determines as a result of a hearing or adjudication conducted pursuant to a complaint submitted by a person directly to the Board . . . that such person is entitled to an order" requiring compliance or compensation. 38 U.S.C. § 4324(c)(4).

Interpreting the USERRA fee statute as not giving the Board authority to grant fee applications for work done before this court is consistent with a longstanding line of cases in which this court has held that the Board is not authorized to grant an award of fees for work done on appeal from a Board order. *See Gallo v. Dep't of Transp.*, 725 F.3d 1306, 1309 (Fed. Cir. 2013) ("[T]his court is the appropriate forum in which to request attorney fees incurred in proceedings before this court."); *Ramos v. Dep't of Justice*, 552 F.3d 1356, 1359-60 (Fed. Cir. 2009) (the Board is not authorized under the Back Pay Act to enter an award for work done before the court of appeals); *Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1581 (Fed. Cir. 1991) (same); *Covington v. Dep't of Health and Human Servs.*, 818 F.2d 838, 840 (Fed. Cir. 1987) (the Board lacks authority to award attorney fees for services rendered in connection with judicial review); *Gavette v. Office of Pers. Mgmt.*, 808 F.2d 1456, 1468 (Fed. Cir. 1986) (en banc) (EAJA request for work done on appeal must be directed to the court of appeals).

Mr. Erickson argues that the cited cases do not speak to attorney fees under USERRA and that this court is

therefore free to depart from its precedent interpreting the fee provisions of other statutory schemes. The reasoning of those cited cases, however, did not depend on the details of the particular statutory schemes. Mr. Erickson does not provide a convincing argument as to why USERRA is different. Instead, he states only that a rule that forbids the Board from awarding fees for judicial review "would conflict with a plain reading of [USERRA], which authorizes 'the Board' to award fees" and would "unduly restrict the broad equitable powers afforded a court to vindicate veterans rights, and the liberal construction given to USERRA for the benefit of those who . . . left private life to serve their country."

Such broad policy generalizations cannot make up for the absence of statutory authority or override the applicable case law. While statutory language unambiguously granting the Board authority to award fees for work done on appeal would, of course, trump prior precedents to the contrary, there is no such unambiguous language in the USERRA fee statute. In fact, as noted, the language of the statute suggests the contrary.

The absence of clear statutory authority to award fees for work on appeal is particularly telling in light of the fact that such a statutory authorization for a fee award against the government would constitute a waiver of sovereign immunity. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983) ("Except to the extent it has waived its immunity, the Government is immune from claims for attorney's fees."). A waiver of sovereign immunity "must be 'unequivocally expressed' in statutory text," and "[a]ny ambiguities in the statutory language are to be construed in favor of immunity." *FAA v. Cooper*, 132 S. Ct. 1441, 1448 (2012). Ambiguity exists "if there is a plausible interpretation of the statute that would not authorize money damages against the government." *Id.* It is far from clear that section 4324(c)(4) authorizes the Board to award attorney fees for work done in the course of judicial

review of Board decisions. We therefore follow our prior precedents in analogous contexts and hold that the Board lacks statutory authority to grant an award for fees incurred in Mr. Erickson's appeals to this court.

### B. USSERA Does Not Authorize This Court to Grant Attorney Fees

Mr. Erickson next argues that if the Board lacks authority under USERRA to grant his fee request, this court should grant the award pursuant to USERRA because USERRA is to be construed liberally and because "veterans' statutes are to be resolved" in favor of veterans. Mr. Erickson admits that his "interpretation arguably conflicts with a purely literal reading of [38 U.S.C.] section 4324(c)(4)'s language that 'the Board' is authorized to award fees." He argues, however, that it would be "untenable" for the court to interpret the statute in such a way that provides "no avenue for a veteran to recover legal fees at the appellate level."

The problem with Mr. Erickson's argument is that this court is not authorized to award attorney fees when it lacks statutory authorization to do so. *See* Fed. Cir. R. 47.7; *Gallo v. Dep't of Transp.*, 725 F.3d 1306, 1308 (Fed. Cir. 2013) ("Under Rule 47.7, this court must itself be authorized by law to award attorney fees."). Furthermore, "this court does not derive its authority to award attorney fees from the Board's authority to do so." *Gallo*, 725 F.3d at 1309; *see also id.* at 1308-09 ("[M]erely because this court is authorized to review a tribunal that is statutorily authorized to award attorney fees, does not mean that this court itself is authorized by that same statute to award attorney fees in the first instance. . . . For example, the Board in certain circumstances may award attorney fees for work before it when attorney fees are not available under the same statute for work done before this court."). Instead, there must be an independent statutory authorization for the court to award fees.

*Id.* at 1309.   Because no such independent statutory authorization exists under USERRA, the court cannot award attorney fees under USERRA in this case.

### C.  Mr. Erickson Is Not Entitled to an Award of Attorney Fees Under EAJA

Mr. Erickson next contends that he is entitled to a fee award under EAJA.  His application for EAJA fees, however, is untimely and must be denied for that reason.

A petition for EAJA fees must be filed within 30 days of the "final judgment in the action."   28 U.S.C. § 2412(d)(1)(B).   In a case in which the court of appeals remands to an agency due to agency error, without retaining jurisdiction over the case, the party that sought the remand is deemed to be the "prevailing party," and the 30-day EAJA clock "begins to run with the remand order itself."   *Former Emps. of Motorola Ceramic Prods. v. United States*, 336 F.3d 1360, 1366 (Fed. Cir. 2003); *see also Shalala v. Schaefer*, 509 U.S. 292 (1993); *Ward v. U.S. Postal Serv.*, 672 F.3d 1294, 1299 (Fed. Cir. 2012); *Gurley v. Peake*, 528 F.3d 1322, 1326-27 (Fed. Cir. 2008).

Mr. Erickson relies on *Covington v. Department of Health and Human Services*, 818 F.2d 838 (Fed. Cir. 1987), where this court granted an application for attorney fees after a remand to the Board resulted in a successful outcome for the petitioner.  *Covington*, however, was a 1987 case that was decided prior to *Former Employees* and the Supreme Court cases that *Former Employees* relied on in fashioning the rule that the EAJA 30-day clock starts to run at the time of the remand (assuming the remand is due to an error in the agency and the court of appeals does not retain jurisdiction).  Therefore, *Covington* is no longer good law for the purpose of determining when the clock begins to run on an EAJA fee application.

Mr. Erickson's first appeal was remanded because the Board had not addressed whether he had waived his USERRA rights by abandoning his civilian career in favor of a military career, which was the ground relied on by the administrative judge who initially rejected Mr. Erickson's USERRA claim. *Erickson I*, 571 F.3d at 1372. The Board had instead relied on the ground that military service was not the motivating factor behind the Postal Service's removal of Mr. Erickson from his position in 2000. According to the Board, the Postal Service was motivated merely by his absence, without regard for the reason for his absence. This court rejected the argument that terminating an employee because of his absence due to military service was different from terminating him because of his military service, and it remanded the case to the Board to consider whether Mr. Erickson had abandoned his civilian career, as the administrative judge had determined. *Id.* at 1372.

Mr. Erickson's second appeal was remanded because the court found that the Board's determination that he had abandoned his civilian career prior to his removal from the Postal Service in 2000 was not supported by substantial evidence. *Erickson II*, 636 F.3d at 1359.

There is no need to decide whether the remand in *Erickson I* was the result of Board error—thereby conveying prevailing-party status on Mr. Erickson and starting a 30-day EAJA clock—because the remand in *Erickson II* was clearly the result of Board error. Mr. Erickson was therefore a prevailing party when the remand order issued in *Erickson II*. For that reason, the 30-day EAJA clock began to run in 2011. That clock has long since expired. Mr. Erickson's request for fees under EAJA is therefore untimely.

Even if Mr. Erickson's EAJA application were timely, it would be without merit. EAJA authorizes a court to award fees to a litigant in a case against the government

if the government's position in the case was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). In Mr. Erickson's case, the government prevailed before the Board in the proceedings that led to both of the appeals to this court. The cases on appeal were close, and even though Mr. Erickson prevailed on both occasions, we are not prepared to say that the government's position in defending the Board's decisions was not "substantially justified." Mr. Erickson would therefore not be entitled to a fee award under EAJA even if he had filed his EAJA applications on time.

> D. The Attorney Fee Provision of the Back
> Pay Act Is Not Applicable to Preference Eligible Postal Employees

Finally, Mr. Erickson argues that the court can and should award attorney fees under the fee provision of the Back Pay Act, 5 U.S.C. § 5596(b)(1)(A)(ii).

In general, the Back Pay Act has been interpreted as authorizing the courts of appeals to award attorney fees incurred on appeal. *Gallo v. Dep't of Transp.*, 725 F.3d 1306, 1309-10 (Fed. Cir. 2013); *Olsen v. Dep't of Commerce*, 735 F.2d 558, 563 (Fed. Cir. 1984); *Hoska v. U.S. Dep't of the Army*, 694 F.2d 270, 273-74 (D.C. Cir. 1982). The government argues, however, that the Back Pay Act does not apply to the Postal Service, and that the provisions of the Back Pay Act (including the attorney fee provision) do not apply to Postal Service employees. Mr. Erickson argues that the Back Pay Act in general, and the attorney fee provision in particular, apply to preference eligible employees in the Postal Service (i.e., certain veterans, also referred to as "preference eligibles"), even though those provisions do not apply to Postal Service employees generally.

The Federal Circuit has not resolved the question whether, or to what extent, the Back Pay Act applies to preference eligible employees in the Postal Service. *See*

*Romero v. United States*, 38 F.3d 1204, 1212 (Fed. Cir. 1994) (not deciding the issue whether the Back Pay Act applies to postal workers due to sparse record and minimal argument); *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) (declining to decide whether the Back Pay Act applies to Postal Service employees); *see also White v. Bloomberg*, 501 F.2d 1379, 1381 n.2 (4th Cir. 1974) ("[T]he Back Pay Act is no longer statutorily applicable to the Postal Service."); *Kellus v. United States*, 13 Cl. Ct. 538, 542 n.4 (1987) (stating that the Fourth Circuit has held that the Back Pay Act does not apply to the Postal Service and that even though the "Federal Circuit pretermitted deciding the question as to whether the Back Pay Act is applicable to Postal Service employees . . . it seems clear that the Back Pay Act" does not authorize suit in the Claims Court).[1]

---

[1]    Without regard to whether the Back Pay Act applies to them, Postal Service employees are entitled to back pay when adverse personnel actions are reversed because the Postal Service's Employee and Labor Relations Manual provides for back pay in those circumstances. *See Rivas v. U.S. Postal Serv.*, 72 M.S.P.R. 383, 391-92 (1996). To be sure, some recent Federal Circuit decisions have applied the Back Pay Act to Postal Service employees. *See Lary v. U.S. Postal Serv.*, 493 F.3d 1355 (Fed. Cir. 2007); *Lary v. U.S. Postal Serv.*, 472 F.3d 1363 (Fed. Cir. 2006). Those decisions, however, have not addressed the question whether the Back Pay Act applies to Postal Service employees, and in particular they have not addressed the question whether the attorney fee provision of the Back Pay Act applies to preference eligibles in the Postal Service. In fact, it does not appear that the Back Pay Act was mentioned in the briefs of either party in either of the *Lary* cases.

After careful consideration, we conclude that, even if the back pay provision of the Back Pay Act applies to preference eligible employees in the Postal Service—an issue we need not reach to decide this case—the attorney fee provision of that Act does not.

The analysis of this issue begins with 39 U.S.C. § 410. That statute provides that "no Federal law dealing with public or Federal . . . employees . . . shall apply to the exercise of the powers of the Postal Service" unless the law is enumerated in subsection (b) of that code provision. The Back Pay Act is not enumerated in 39 U.S.C. § 410(b). That Act therefore does not apply generally to the Postal Service.

In addition, the Back Pay Act by its own terms does not apply to the Postal Service because the Postal Service is not an "executive agency," the term that is used to define the scope of the Act's  coverage. *See* 5 U.S.C. § 5596(a). Instead, the Postal Service is defined by statute as an "independent establishment of the executive branch." 39 U.S.C. § 201. Although "executive agency" is defined as "an Executive department, a Government corporation, and an independent establishment," 5 U.S.C. § 105, the term "independent establishment" is further defined to mean "an establishment in the executive branch (other than the United States Postal Service . . . )," 5 U.S.C. § 104. The Postal Service is therefore not an "executive agency" within the meaning of title 5 in general and the Back Pay Act in particular. *See also White v. Bloomberg*, 501 F.2d 1379, 1381 n.2 (4th Cir. 1974).

The inapplicability of the Back Pay Act to Postal Service employees in general does not, however, answer the question whether the Back Pay Act applies to preference eligible employees in the Postal Service. The answer to that question turns on the interpretation of 39 U.S.C. § 1005(a)(2), a provision of the Postal Reorganization Act, Pub. L. No. 91-375, 84 Stat. 719, 731 (1970). Section

1005(a)(2) of that Act states that "[t]he provisions of title 5 relating to a preference eligible" apply to postal workers. The question then becomes whether the Back Pay Act and its fee provision are provisions of title 5 that "relat[e] to a preference eligible." If so, then the Back Pay Act provides a basis for a preference eligible employee such as Mr. Erickson to obtain an award of attorney fees for a successful termination appeal, even though a Postal Service employee who is not a preference eligible employee would not be entitled to such an award. [2]

It is possible to read the phrase "relating to a preference eligible" to mean "applicable to a preference eligible," rather than "specifically relating to a preference eligible." Read in the former way, the statute would include the attorney fee provision of the Back Pay Act. But the former meaning is not the most natural meaning of the term "relating to." Thus, for example, a statute that says that everyone who purchases goods in the District of Columbia must pay a sales tax would not naturally be

---

[2] The government argues that section 1005(a)(2) does not help Mr. Erickson in this case because that section refers to the provisions of title 5 relating to preference eligible employees, but does not refer to the provisions of title 38, where USERRA is codified. That argument misses the point. The Back Pay Act is found in title 5, and it provides rights to any agency employee who is found "to have been affected by an unjustified or unwarranted personnel action" resulting in monetary loss to the employee. 5 U.S.C. § 5596(b)(1). It does not matter what the source of the employee's violated right is that makes the adverse personnel action unjustified or unwarranted (e.g., USERRA); what *does* matter is whether the Back Pay Act is a statute "relating to a preference eligible" so that the Act, including its attorney fee provision, applies to such employees.

interpreted as statute "relating to left-handed persons," even though the statute would, of course, apply to left-handers who purchase goods in the District of Columbia, along with everyone else who does so.

In *Andress v. U.S. Postal Service*, 56 M.S.P.R. 501 (1993), the Merit Systems Protection Board held that "the Back Pay Act is a provision of title 5 relating to preference eligibles which, because of section 1005(a)(2), continues to apply to preference eligible employees of the Postal Service." *Id.* at 508. Accordingly, the Board held that a preference eligible employee of the Postal Service is entitled to back pay under the Back Pay Act following the reversal of an adverse action on appeal to the Board.

The Board began its analysis with section 14 of the Veterans Preference Act of 1944, Pub. L. No. 78-359, 58 Stat. 387, which was construed by the Court of Claims to provide back pay rights for veterans in the civil service. *See Wittner v. United States*, 76 F. Supp. 110, 111 (Ct. Cl. 1948). Four years after the enactment of the Veterans Preference Act of 1944, Congress explicitly provided for back pay for veterans and extended the entitlement to back pay to all individuals—not just veterans—who were unjustifiably removed or suspended from federal employment. Act of June 10, 1948, Pub. L. No. 80-623, 62 Stat. 354. The Board in *Andress* reasoned that because back pay was originally a right associated with preference eligibles, and because the legislative history of section 1005(a)(2) indicated that the purpose of the statute was to "preserve the existing rights of preference eligible employees," the Back Pay Act should be construed to apply to preference eligible employees in the Postal Service. 56 M.S.P.R. at 507-08.

The Board's decision in *Andress* did not address the right to an attorney fee award. But the Board's ruling that the Back Pay Act is a provision "relating to a preference eligible" would lead to the conclusion that a Postal

Service preference eligible would be entitled to an attorney fee award under the attorney fee provision of that Act. However, the Board's analysis in that regard is far from airtight.

In particular, the statutory basis for the Board's ruling in *Andress*—that the Back Pay Act as a whole is a "provision of title 5 relating to a preference eligible" is questionable. The Back Pay Act has no special application to veterans. Therefore, if the Board is correct that the Back Pay Act is a statute "relating to a preference eligible," then any provision of title 5 is one "relating to a preference eligible" except for those provisions that explicitly exclude veterans, if there are any. The Board's reading of the statute would therefore result in making the exception set forth in section 1005(a)(2) swallow the rule: all of title 5 would apply to preference eligibles in the Postal Service.

That result, as odd as it would seem standing alone, is made even more unlikely by the presence of paragraph (4)(A)(i) in the same subsection of section 1005. That paragraph provides that subchapter II of chapter 75 of title 5 applies to preference eligible Postal Service employees. 39 U.S.C. § 1005(a)(4)(A)(i). Subchapter II is the portion of title 5 that gives competitive-service employees rights to internal procedures and a Merit Systems Protection Board appeal in the case of serious disciplinary actions against them. If the Back Pay Act were a provision of title 5 "relating to a preference eligible," per section 1005(a)(2), then it is difficult to see why subchapter II of chapter 75 would not also be a provision of title 5 "relating to a preference eligible," since subchapter II, like the Back Pay Act, does not explicitly refer to preference eligible employees, except for employees in the excepted service. *See* 5 U.S.C. § 7511. Yet if subchapter II were considered a provision of title 5 "relating to a preference eligible," then it would already have been made applicable to preference eligibles by section 1005(a)(2), and section

1005(a)(4)(A)(i) would be entirely superfluous. If Congress had meant to make all of title 5 applicable to preference eligibles, it would have been much simpler just to say so directly rather than referring to particular provisions that "relate to" preference eligibles. The Board's interpretation in *Andress* of the phrase "relating to a preference eligible" is therefore unconvincing.

As noted, the Board's decision in *Andress* relies heavily on the legislative history of the Postal Reorganization Act of 1970. Upon examination, however, the legislative history does not support the broad conclusion that the Back Pay Act as a whole is applicable to preference eligible employees in the Postal Service.

Section 1005(a)(2) was the product of a floor amendment added by Senator Hartke. In adding the amendment, he stated that the purpose of his amendment was "to clarify and maintain all of those rights which veterans presently enjoy under existing law." 116 Cong. Rec. 22337 (1970) (remarks of Sen. Hartke); *accord Andress*, 56 M.S.P.R. at 507. Because the Veterans Preference Act of 1944 had been interpreted to extend back pay rights to veterans (along with various other benefits related to federal employment), the purpose of Senator Hartke's amendment seems to have been to ensure that those rights were not reduced by the creation of the Postal Service as an independent entity in 1970.

That is essentially how the Court of Claims interpreted the 1970 statute in the only case from this court or its predecessor that has focused on the language at issue here. In *Bredehorst v. United States*, 677 F.2d 87 (Ct. Cl. 1982), a preference eligible in the Postal Service argued that he was entitled to the same rights enjoyed by a federal employee in the competitive service with respect to suspensions of less than 30 days. At that time, employees in the competitive service enjoyed certain procedural rights with respect to suspensions of less than 30

days by regulation, while the statutory protections in subchapter II of chapter 75 of title 5—which applied to preference eligibles in the Postal Service—did not extend to suspensions of less than 30 days. *See id.* at 89-90.

The plaintiff in *Bredehorst* relied on Senator Hartke's floor remarks in arguing that the Postal Reorganization Act should be interpreted to ensure that preference eligibles in the Postal Service would not have fewer employment rights than their peers in the competitive service. The Court of Claims, however, rejected that argument and held, instead, that "section 1005(a)(2) does not give a [Postal] Service preference eligible employee the same rights as a federal employee in the competitive service but only the rights granted to veterans by the Veterans' Preference Act." *Bredehorst*, 677 F.2d at 89. In reaching that conclusion, the court cited a different portion of Senator Hartke's comments, in which he remarked that under existing law a veteran had "the rights of appeal in adverse actions and the releasing of employees when reductions in the work force occur. These rights, guaranteed by the Veterans Preference Act of 1944, are the same rights enjoyed by veterans in any other branch of the competitive civil service." 116 Cong. Rec. 22337 (1970) (remarks of Sen. Hartke). It thus appears that Senator Hartke's concern was to ensure that the rights granted to preference eligibles by the Veterans Preference Act of 1944 not be curtailed by the enactment of the Postal Reorganization Act. *See Bredehorst*, 677 F.2d at 89.

The *Bredehorst* court thus interpreted the phrase "relating to a preference eligible" in section 1005(a)(2) as referring to provisions of title 5 that incorporated the protections enacted in the Veterans Preference Act of 1944 and its successors. That would include the entitlement to back pay found in the Back Pay Act of 1966, which incorporated the back pay remedy made applicable to veterans in the 1944 Act and then extended to other civil servants by statute in 1948.

Those protections, however, do not include the right to attorney fees, which was not part of the Veterans Preference Act of 1944 or any of its successors, such as the Act of June 10, 1948, or the Act of August 26, 1950, Pub. L. No. 81-733, 64 Stat. 476. In fact, the right to attorney fees was not even part of the original Back Pay Act of 1966, Pub. L. No. 89-380, 80 Stat. 94,[3] at the time the Postal Reorganization Act (and 39 U.S.C. § 1005(a)(2)) was enacted in 1970. The attorney fee provision was not added to the Back Pay Act until 1978, as part of the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111, 1216. And when that was done, there was no indication that the attorney fee provision was intended to apply to preference eligibles in the Postal Service. Therefore, whatever force Senator Hartke's comments may have had as to the entitlement of veterans to benefits found in the Back Pay Act at that time, those comments would not have applied to attorney fee awards in any event.

This analysis leads us to the conclusion that the attorney fee provision of the Back Pay Act is not a provision of title 5 "relating to a preference eligible" within the meaning of 39 U.S.C. § 1005(a)(2), and therefore Mr. Erickson is not entitled to a fee award under the Back Pay Act.

We recognize that there is some untidiness to this resolution of the statutory construction issue in this case. In particular, the result we reach has the consequence that even though one portion of the Back Pay Act (the back pay entitlement) may be treated as a provision of title 5 "relating to a preference eligible," a different por-

---

[3] The Back Pay Act of 1966 was "enacted to consolidate authorities for awarding back pay to employees subjected to unjustified personnel actions." *Andress*, 56 M.S.P.R. at 507 (citing legislative history).

tion of the same Act (the attorney fee provision) is not. That construction of the statute, however, is the necessary result of following the *Bredehorst* case, the sole binding authority in this area. Moreover, the portion of the Back Pay Act authorizing back pay can be viewed as "relating to a preference eligible" based on its provenance in the Veterans Preference Act of 1944, without needing to find that all of the provisions of the Back Pay Act relate to preference eligible employees. Notably, the result we adopt here is not inconsistent with the actual holding of the Board's decision in *Andress*, since the Board's decision there dealt with back pay and not attorney fees.[4]

Accordingly, we hold that Mr. Erickson is not entitled to an attorney fee award under the Back Pay Act for work done in this court. That, in our view, is where Congress has left the matter. If persons in Mr. Erickson's position are to be made eligible for attorney fees under the Back Pay Act, it will have to be done through congressional action, not through what would amount to a judicial amendment to the statute that Congress wrote. Accordingly, Mr. Erickson's application for an award of attorney fees for work done in this court is denied.

## APPLICATION DENIED

July 18, 2014
Date

---

[4]    Because this case deals with attorney fees and not back pay, it is unnecessary for us to decide whether, in light of the Court of Claims' decision in *Bredehorst*, the Board in *Andress* correctly held that the back pay remedy of the Back Pay Act is a provision "relating to a preference eligible" and is therefore applicable to preference eligible employees in the Postal Service.