*PRELIMINARY PRINT*

VOLUME 604 U. S. PART 2
PAGES 518–541

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

MARCH 26, 2025

Page Proof Pending Publication

REBECCA A. WOMELDORF
REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published.   Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

## UNITED STATES *v.* MILLER

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

No. 23–824.    Argued December 2, 2024—Decided March 26, 2025

This case concerns the powers given a bankruptcy trustee under § 544(b) of the Bankruptcy Code to set aside, or "avoid," certain fraudulent transfers of a debtor's assets.   See 11 U. S. C. § 544(b)(1).   Respondent is the bankruptcy trustee of a failed Utah-based business whose share-holders misappropriated $145,000 in company funds to satisfy their personal federal tax liabilities.   Respondent filed an "avoidance" suit against the United States seeking to claw back the misappropriated funds for the benefit of the bankruptcy estate.   He filed the action pursuant to § 544(b), which allows a trustee to "avoid any transfer of an interest of the debtor . . . that is voidable under applicable law by a creditor holding an unsecured claim."   But to prevail under § 544(b), a trustee must identify an "actual creditor" who could have voided the transaction under applicable law outside of bankruptcy proceedings.   In this case, respondent invoked Utah's fraudulent-transfer statute—which gives creditors a cause of action to invalidate certain transfers by a debtor—as the "applicable law" underlying his § 544(b) claim.   The Government argued that respondent's § 544(b) claim failed because respondent could not identify an "actual creditor" that could have voided the fraudulent transfer because sovereign immunity would bar any such Utah cause of action against the Government.   The Bankruptcy Court disagreed, concluding that § 106(a) of the Bankruptcy Code—which waives the Government's sovereign immunity "with respect to" some 59 Bankruptcy Code provisions including § 544—also waives immunity for the Utah cause of action nested within the § 544(b) claim.   The District Court adopted the Bankruptcy Court's decision and the Tenth Circuit affirmed.

*Held*: Section 106(a)'s sovereign-immunity waiver applies only to a § 544(b) claim itself and not to state-law claims nested within that federal claim. Pp. 527–539.

   (a) This dispute turns on the interplay between § 106(a) and § 544(b) of the Bankruptcy Code.   Section 106(a)(1) provides that the Government's "sovereign immunity is abrogated . . . with respect to" a list of Code provisions, including § 544. Respondent contends that § 106(a) also waives sovereign immunity with respect to whatever state-law cause of action a trustee might invoke as the source of "applicable law" for his

or her § 544(b) claim. But that result would transform § 106(a) from a jurisdiction-creating provision into a liability-creating provision, which conflicts with the Court's traditional understanding of sovereign-immunity waivers. As the Court's precedents explain, "[s]overeign immunity is jurisdictional in nature" and operates to deprive courts of the power to hear suits against the United States absent Congress's express consent. *FDIC* v. *Meyer*, 510 U. S. 471, 475. Waivers of sovereign immunity function simply as "prerequisite[s] for jurisdiction"—they do not create any new substantive rights or alter any pre-existing ones. *United States* v. *Mitchell*, 463 U. S. 206, 212. Respondent's attempt to leverage § 106(a)'s waiver of immunity—*i. e.*, the statute's grant of jurisdiction—into an affirmative expansion of the trustee's avoidance powers under § 544(b) conflicts with the Court's understanding of sovereign-immunity waivers. Pp. 527–529.

(b) Section 106(a)'s text, context, and structure make clear that it does not operate to modify § 544(b)'s substantive requirements. Indeed, § 106(a)(5) expressly provides that "[n]othing in this section shall create any substantive claim for relief or cause of action not otherwise existing" under some other source of law. That language directly refutes respondent's argument that § 106(a)'s sovereign-immunity waiver extends to "[b]oth the cause of action [§ 544(b) establishes] and its elements." Brief for Respondent 18. Construing § 106(a) to modify the "elements" of a § 544(b) claim would give the trustee a substantive claim for relief against the Government that does not "otherwise exis[t]" under § 544(b) or Utah law in direct conflict with § 106(a)(5).

Section 544's text and structure reinforce this conclusion. Unlike § 544(b), § 544(a) has no actual-creditor requirement and thus permits a trustee to invalidate certain transfers that a lien holder could have voided "whether or not such a creditor exists." §§ 544(a)(1), (2). This contrast reflects Congress's deliberate choice to tie the trustee's rights under subsection (b) to the rights of an actual creditor under "applicable law." Eliminating the actual-creditor requirement would upend decades of practice and precedent recognizing that § 544(b) merely empowers a trustee to step into the shoes of a creditor, subject to the same limitations and defenses that would apply to that creditor outside bankruptcy.

Finally, even if the language and logic of § 544 and § 106(a) permitted respondent's broad reading of the sovereign-immunity waiver, the Court's precedents would still foreclose that reading. The Court's precedents require construing sovereign-immunity waivers narrowly, with any ambiguities resolved in favor of the sovereign. See, *e. g., FAA* v. *Cooper*, 566 U. S. 284, 291. Pp. 529–532.

(c) Respondent asserts that § 106(a)(1)'s use of the phrase "with respect to" shows Congress's intent to abrogate sovereign immunity for "all subjects that concern or regard" the listed provisions, including the meaning of "applicable law" in § 544(b). Respondent's reliance on dictionary definitions and cases that adopt capacious readings of phrases similar to "with respect to" cannot support his argument, as those authorities all examine those terms in very different statutory contexts. Respondent's textual argument thus flouts the "fundamental canon of statutory construction" that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis* v. *Michigan Dept. of Treasury,* 489 U. S. 803, 809. This canon carries particular force when construing phrases that govern conceptual relationships—like "with respect to"—whose meanings inherently depend on their surrounding context. See, *e. g.*, *Dubin* v. *United States*, 599 U. S. 110, 119 (noting that such phrases are "context sensitive"). As set forth above, context cuts decidedly against respondent's broad reading of § 106(a)(1).

Respondent's appeal to § 106(a)'s enactment history is similarly unavailing. Since its adoption in 1978, § 106 has always been understood to provide a "limited waiver of sovereign immunity in bankruptcy cases," designed to "achieve approximately the same result that would prevail outside of bankruptcy." S. Rep. No. 95–989, p. 29; H. R. Rep. No. 95–595, p. 317. Nothing in the 1994 amendments to § 106 dislodged that original understanding. And in any event, legislative history cannot supply a waiver where the language of the statute does not clearly do so. See *Department of Agriculture Rural Development Rural Housing Service* v. *Kirtz*, 601 U. S. 42, 49. Pp. 532–535.

(d) Respondent's remaining arguments lack merit. First, the Court's interpretation does not render § 106(a)'s waiver meaningless with respect to § 544. Section 106(a) enables trustees to prevail against the Government under § 544(a), which has no actual-creditor requirement. Because federal tax law separately provides that tax liens held by the Federal Government may be invalidated under particular circumstances, see 26 U. S. C. § 6323, § 106(a) allows trustees to avoid transfers of these tax liens. Section 106(a) also grants federal courts jurisdiction to hear § 544(b) claims against state governments that have consented to being sued under their fraudulent-transfer statutes.

Second, the Court rejects respondent's argument that because § 106(a)(1) refers to § 544 as a whole (rather than by subsection), the waiver must be construed to give substantive effect to all of § 544's subsections. Many of the other 58 Bankruptcy Code provisions listed "as a whole" in § 106(a)(1) include subsections that plainly do not implicate sovereign immunity at all.

Syllabus

Third, respondent's reliance on *Kirtz*, 601 U. S. 42, to support his argument that Congress sometimes waives sovereign immunity while simultaneously establishing a new substantive right, is unavailing. *Kirtz* involved a statute that bears little resemblance—in text, structure, or operation—to § 106(a), and indeed explicitly authorized claims against the Government. Nothing in *Kirtz* suggests that courts should presume, in the absence of explicit statutory language, that Congress has waived the Government's sovereign immunity.

Finally, the Court declines respondent's invitation to affirm on alternative grounds, leaving it to the courts below to decide whether respondent may pursue these arguments on remand. Pp. 535–539.

71 F. 4th 1247, reversed.

JACKSON, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, ALITO, SOTOMAYOR, KAGAN, KAVANAUGH, and BARRETT, JJ., joined. GORSUCH, J., filed a dissenting opinion, *post*, p. 539.

*Yaira Dubin* argued the cause for the United States. With her on the briefs were *Solicitor General Prelogar, Deputy Assistant Attorney General Hubbert, Deputy Solicitor General Gannon, Ellen Page DelSole,* and *Ivan C. Dale.*

*Lisa S. Blatt* argued the cause for respondent. With her on the brief were *Aaron Z. Roper, Jeffrey G. Ho, Erin M. Sielaff,* and *Reid W. Lambert.**

———————
*A brief of *amici curiae* urging reversal was filed for the State of Oregon et al. by *Ellen F. Rosenblum,* Attorney General of Oregon, *Benjamin Gutman,* Solicitor General, and *Peenesh Shah,* Assistant Attorney General, and by the Attorneys General for their respective jurisdictions as follows: *Steve Marshall* of Alabama, *Tim Griffin* of Arkansas, *Rob Bonta* of California, *Philip J. Weiser* of Colorado, *William Tong* of Connecticut, *Brian L. Schwalb* of the District of Columbia, *Anne E. Lopez* of Hawaii, *Raúl R. Labrador* of Idaho, *Kwame Raoul* of Illinois, *Theodore E. Rokita* of Indiana, *Aaron M. Frey* of Maine, *Andrea Joy Campbell* of Massachusetts, *Keith Ellison* of Minnesota, *Matthew J. Platkin* of New Jersey, *Letitia James* of New York, *Drew H. Wrigley* of North Dakota, *David A. Yost* of Ohio, *Michelle A. Henry* of Pennsylvania, *Peter F. Neronha* of Rhode Island, *Marty Jackley* of South Dakota, *Jonathan Skrmetti* of Tennessee, *Jason S. Miyares* of Virginia, and *Robert W. Ferguson* of Washington.

Briefs of *amici curiae* urging affirmance were filed for the Chamber of Commerce of the United States of America by *Elaine J. Goldenberg* and *Andrew R. Varcoe*; for the National Association of Bankruptcy Trustees

JUSTICE JACKSON delivered the opinion of the Court.

The Bankruptcy Code empowers a bankruptcy trustee to set aside, or "avoid," certain transfers of a debtor's assets in order to recover those assets for the benefit of the bankruptcy estate. This case concerns the trustee's avoidance powers under §544(b) of the Code. Under that provision, a trustee may avoid certain transfers that would be "voidable under applicable law"—that is, voidable outside of bankruptcy proceedings. 11 U. S. C. §544(b)(1). Trustees typically rely on state statutes to supply the "applicable law" when suing under §544(b) to avoid a debtor's transfer of assets.

In this dispute, a trustee invoked Utah law as the basis for a §544(b) suit seeking to claw back a debtor's federal tax payment. Ordinarily, the Federal Government's sovereign immunity would bar any suit against it under Utah law. But the Bankruptcy Code contains a sovereign-immunity waiver, §106(a), that abrogates the Government's sovereign immunity "with respect to" §544. §106(a)(1). This case requires us to determine the scope of that waiver.

Specifically, we must decide whether §106(a) abrogates sovereign immunity *only* with respect to the federal cause of action created by §544(b) or whether it *also* abrogates sovereign immunity with respect to the underlying state-law claims that supply the "applicable law" for that federal cause of action. We hold that §106(a)'s sovereign-immunity waiver applies only to the §544(b) claim itself and not to any state-law claims nested within that federal claim. Section 106(a) is properly understood as a jurisdictional provision that empowers courts to hear §544(b) claims against the Government to the extent such claims are otherwise available under state law; it does not alter the substantive mean-

by *Richard P. Cook*; for the National Creditors Bar Association by *Brit J. Suttell*, *Stephen Sather*, and *Michael S. Truesdale*; and for Eugene Wedoff et al. by *David R. Kuney, pro se.*

ing of § 544(b)'s "applicable law" clause. We therefore reverse the decision below.

## I

## A

Bankruptcy trustees have long had the power to invalidate, or "avoid," certain transfers of assets made by a debtor. These "avoidance powers" serve multiple ends. Most obviously, they help the trustee maximize the value of the bankruptcy estate by enabling the trustee to recover assets that otherwise would have been lost. The avoidance powers also help the trustee equalize the distribution of the debtor's assets among creditors by preventing the debtor from offloading assets to preferred creditors outside of the formal bankruptcy process.

Today, the avoidance powers are codified in Chapter 5 of the Bankruptcy Code, which delineates the specific types of transfers that trustees are empowered to set aside. Section 545 of the Code, for instance, permits a trustee to avoid the transfer of certain statutory liens. Meanwhile, § 547(b) allows a trustee to invalidate transfers that the debtor made immediately before bankruptcy proceedings began. And § 548 permits a trustee to set aside certain fraudulent transfers, such as those made for the purpose of delaying or impeding the repayment of creditors.

This case involves the trustee's avoidance powers under § 544(b). That provision allows a trustee to "avoid any transfer of an interest of the debtor . . . that is voidable under applicable law by a creditor holding an unsecured claim." § 544(b)(1). Although the term "applicable law" can technically refer to any state or federal law outside of the Bankruptcy Code, trustees typically rely on state statutes to supply the "applicable law" for avoidance suits under § 544(b).

The state statutes that trustees most often invoke are known as "fraudulent transfer" laws. 5 Collier on Bankruptcy ¶544.06[2], p. 544–27 (R. Levin & H. Sommer eds.,

16th ed. 2024). These laws—which generally employ the same language from State to State—aim to prevent debtors from hiding or shielding their assets from creditors. See *ibid.* (explaining that 46 States have adopted either the Uniform Fraudulent Transfer Act or its successor, the Uniform Voidable Transactions Act). To that end, most fraudulent-transfer statutes provide creditors with a cause of action to invalidate any transfer that a debtor made with the intent to defraud creditors. Creditors may also typically invoke these laws to void "constructive" fraudulent transfers—that is, transfers made without an actual intent to defraud, such as an insolvent debtor's sale or transfer of assets for something less than their equivalent value. 2 Bankruptcy Law Manual § 9:29, pp. 779–780 (5th ed. 2024).[1]

Notably, to show that a transfer is "voidable under applicable law," a bankruptcy trustee must "identify the actual creditor or creditors who could have set aside the transaction in question under applicable law." 5 Collier, Bankruptcy ¶ 544.06[1], at 544–25. "If there is no creditor against whom the transfer is voidable under the applicable law, the trustee is powerless to act." *Ibid.*

This "actual creditor" requirement serves as an important check on the trustee's § 544(b) powers. Absent the actual-creditor requirement, a trustee could use § 544(b) to unwind transactions that would never actually be at risk of invalidation outside of bankruptcy proceedings. The actual-creditor requirement thus mitigates the disruptive potential of a trustee's avoidance power by ensuring that the trustee has

---

[1] As noted above, the Bankruptcy Code contains its own fraudulent-transfer provision in § 548. Although that provision resembles most States' fraudulent-transfer laws, its statute of limitations is only two years. § 548(a)(1). For that reason, a trustee who seeks to invalidate a fraudulent transfer that occurred more than two years before the bankruptcy petition was filed will ordinarily bring a § 544(b) action—instead of a § 548 action—and point to an "applicable" state law with a longer lookback period.

"no greater rights of avoidance than the actual creditor would have if that creditor were asserting invalidity on its own behalf." *Id.*, ¶544.06[3], at 544–29.

B

This case arises from the collapse of a Utah-based transportation business called All Resort Group. The company fell into insolvency in 2013 as the result of poor management and financial malfeasance. As the company struggled financially, two of its shareholders began misappropriating company funds for their own personal use, including to pay off personal debts. In 2014, they transferred roughly $145,000 in company funds to the Internal Revenue Service to satisfy their personal income-tax obligations. The company received nothing in return for paying off these shareholders' debts.

Three years later, the company filed for bankruptcy. Respondent was appointed as trustee of the bankruptcy estate. He filed this suit against the United States under § 544(b) shortly after his appointment, seeking to avoid the 2014 tax payments.

Respondent invoked Utah's fraudulent-transfer statute as the source of "applicable law" for his § 544(b) claim. Like most fraudulent-transfer laws, Utah's statute allows a creditor to void a debtor's transfer of assets if the debtor was insolvent at the time of the transfer and received less than equal value in return. Utah Code § 25–6–6 *et seq.* (2014).[2]

The parties cross-moved for summary judgment in Bankruptcy Court. The Government did not contest respondent's allegation that All Resort Group was insolvent when it made the 2014 tax payments on behalf of its shareholders. Nor did it dispute that the company received nothing of value in exchange for making those payments. Instead, the

---

[2] Utah amended and recodified its fraudulent-transfer statute after the transfer at issue here. The changes to the statute are immaterial to the question presented in this case.

Government asserted that respondent's claim failed because he could not satisfy § 544(b)'s actual-creditor requirement. Specifically, the Government argued, respondent could not identify any creditor capable of prevailing in a fraudulent-transfer suit against the Government under Utah law because, outside of bankruptcy, any such suit would be barred by sovereign immunity.

The Bankruptcy Court rejected that argument and entered judgment for respondent. *In re All Resort Group, Inc.*, 617 B. R. 375, 379 (Bkrtcy. Ct. Utah 2020). The court based its decision on § 106(a) of the Bankruptcy Code, which waives the Government's sovereign immunity for certain claims arising under the Code. *Id.*, at 386. In particular, § 106(a)(1) provides that "sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to" 59 different provisions of the Code, including § 544. § 106(a)(1).[3]

The Bankruptcy Court construed § 106(a) as waiving the Government's sovereign immunity not only as to the trustee's § 544(b) claim but also "as to the underlying state law cause of action" nested within the § 544(b) claim. 617 B. R., at 386. Accordingly, the court held that "sovereign immunity does not preclude [respondent] from satisfying the actual creditor requirement." *Id.*, at 391.

The District Court adopted the Bankruptcy Court's decision and the Tenth Circuit later affirmed. 71 F. 4th 1247 (2023). Like the Bankruptcy Court, the Tenth Circuit concluded that § 106(a) "expresses Congress's intent to abolish the Government's sovereign immunity in an avoidance proceeding arising under § 544(b)(1), regardless of the context in which the defense arises." *Id.*, at 1253.

The Tenth Circuit's decision reinforced a conflict among the Courts of Appeals regarding whether § 106(a) abrogates

---

[3] The Code defines "governmental unit" to include the "United States" and any "department, agency, or instrumentality of the United States." 11 U. S. C. § 101(27). The definition also includes any "State." *Ibid.*

sovereign immunity with respect to a state-law claim that supplies the "applicable law" for a trustee's § 544(b) claim. We granted certiorari to resolve that conflict. See 602 U. S. 1037 (2024).

## II

This dispute turns on the interplay between § 106(a) and § 544(b) of the Bankruptcy Code. The parties here agree that § 106(a) waives the Government's sovereign immunity with respect to the federal cause of action created by § 544(b). But respondent contends that § 106(a) goes further than that by also waiving sovereign immunity with respect to whatever state-law cause of action a trustee might invoke as the source of "applicable law" for his or her § 544(b) claim.

As explained below, we hold that § 106(a) does not sweep as broadly as respondent maintains. Waivers of sovereign immunity are jurisdictional provisions that empower courts to hear claims against the Government but do not themselves typically create any new substantive rights against the Government. Here, statutory text, context, and structure all demonstrate that § 106(a) fits squarely within that mold. For that reason, we conclude that § 106(a) does not alter the substantive meaning of § 544(b)'s "applicable law" clause by providing a waiver of immunity that would not otherwise exist under that external source of law.

## A

Before discussing § 106(a) itself, it is helpful to recall how waivers of sovereign immunity operate in general. As our precedents explain, "[s]overeign immunity is jurisdictional in nature" and deprives courts of the power to hear suits against the United States absent Congress's express consent. *FDIC* v. *Meyer*, 510 U. S. 471, 475 (1994). In providing that consent, waivers of sovereign immunity function simply as "prerequisite[s] for jurisdiction"—they do not create any new substantive rights or alter any pre-existing ones. *United States* v. *Mitchell*, 463 U. S. 206, 212 (1983).

That is precisely the role that § 106(a) plays within the Bankruptcy Code. Section 106(a)(1) provides that the Federal Government's "sovereign immunity is abrogated . . . with respect to" several dozen provisions of the Code, thereby granting courts the power to hear claims against the Government under those provisions. That includes the power to hear claims under § 544, which is among the listed provisions. At the same time, § 106(a)(5) expressly provides that "[n]othing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law." In this way, § 106(a)'s text, read as a whole, makes clear that it operates like any other waiver of sovereign immunity: It is "merely jurisdictional" and does not establish any substantive rights against the Government. *United States* v. *Testan*, 424 U. S. 392, 400 (1976).

Respondent's reading of § 106(a) departs from that conventional understanding of sovereign-immunity waivers. Under respondent's view, § 106(a) does not simply give courts jurisdiction to hear § 544(b) claims against the Government; it also alters the substantive requirements of the claim itself. It is undisputed that, outside of bankruptcy proceedings, the United States could invoke the defense of sovereign immunity to bar any lawsuit seeking to invalidate a federal tax payment under a State's fraudulent-transfer law. That barrier to state-law liability would ordinarily doom a trustee's § 544(b) claim by making it impossible for the trustee to show that the tax payment at issue is "voidable under applicable law" by an actual creditor. But, respondent contends, § 106(a) vitiates that barrier by abrogating the Government's sovereign immunity with respect to *both* the § 544(b) claim *and* the state-law claim nested within it. As respondent puts it, "Section 106(a)'s clear waiver 'with respect to' section 544 applies equally to the trustee's section 544(b) cause of action and the applicable law that provides the elements of that cause of action." Brief for Respondent 2.

Respondent's reading of § 106(a) would thus transform that statute from a jurisdiction-creating provision into a liability-creating provision. But we have declined to read sovereign-immunity waivers in that way. Rather, we have said that the question "whether there has been a waiver of sovereign immunity" is "'analytically distinct'" from the question "whether the source of substantive law upon which the claimant relies provides an avenue for relief." *Meyer*, 510 U. S., at 484; see, *e. g.*, *United States* v. *Navajo Nation*, 556 U. S. 287, 290 (2009) ("Neither the Tucker Act nor the Indian Tucker Act creates substantive rights; they are simply jurisdictional provisions that operate to waive sovereign immunity for claims premised on other sources of law"). Respondent conflates these two questions by seeking to leverage § 106(a)'s waiver of immunity—*i. e.*, the statute's grant of jurisdiction—into an affirmative expansion of the trustee's avoidance powers under § 544(b).

Construing § 106(a) to modify the elements of a § 544(b) claim would thus reflect a highly unusual understanding of sovereign-immunity waivers. That alone casts doubt on respondent's reading of § 106(a). But even if that reading did not conflict with our normal understanding of sovereign-immunity waivers, it would remain untenable as a basic matter of text and structure.

B

The text and structure of § 106 and § 544 make clear that § 106(a)'s waiver of sovereign immunity does not operate to modify § 544(b)'s substantive requirements.

As noted above, § 106(a) expressly states that it does *not* "create any substantive claim for relief or cause of action not otherwise existing" under some other source of law. § 106(a)(5). That language plainly refutes the notion that § 106(a)'s sovereign-immunity waiver extends to "[b]oth the cause of action [that § 544(b) establishes] and its elements." Brief for Respondent 18. Indeed, construing § 106(a) to modify the "elements" of a § 544(b) claim would necessarily

give the trustee a substantive claim for relief against the Government that does not "otherwise exis[t]" under § 544(b) or Utah law.[4]   Section 106(a)'s text thus confirms that it does not alter § 544(b)'s substantive requirements.

So, too, does the list of Bankruptcy Code provisions identified in § 106(a) itself.   Notably, § 106(a) does not meaningfully alter the substantive obligations of trustees under any of the 58 other provisions that appear on the list alongside § 544.   So far as we are aware, the other avoidance provisions on the list retain the same substantive elements regardless of whether the trustee is suing the Government or a private entity.   Given that § 106(a) leaves the substantive elements of those avoidance provisions untouched, it would be odd to read the provision as modifying the elements of § 544(b).

---

[4] The dissent takes issue with our suggestion that respondent's reading of § 106(a) would modify the "elements" of a § 544(b) claim.   But that is not just our characterization of respondent's reading—that is how respondent himself describes his position.   See, *e. g.*, Brief for Respondent 27 ("Congress had no reason to waive immunity in the first place unless the waiver applied to the elements of the cause of action"); Tr. of Oral Arg. 39 ("[T]he waiver of sovereign immunity with respect to [§]544 just on its face textually applies to the elements, to the same extent grammatically, logically that it applies to the claim.   You can't waive a claim without waiving the elements").   In any event, the dissent's attempt to recast § 106(a) as merely "waiv[ing] an affirmative defense"—but not altering the elements of § 544(b)—underscores the inherent tension in respondent's position. *Post*, at 541 (opinion of GORSUCH, J.).   Nobody disputes that § 106(a) precludes the Government from raising an affirmative *jurisdictional* defense to a § 544(b) claim.   But the issue in this case is whether § 106(a) also bars the Government from raising a *merits* defense to that claim.   Put differently, the question here is not whether the Government can invoke sovereign immunity to prevent a court from hearing a trustee's § 544(b) claim.   Rather, the question is whether § 106(a) prevents the Government from relying on sovereign immunity to demonstrate that the trustee cannot establish a core substantive requirement of the underlying § 544(b) claim—namely, that the challenged transfer is "voidable under applicable law" by an actual creditor.

Section 544's own text and structure reinforce that conclusion.  Recall that § 544(b) requires a trustee to identify an actual creditor capable of voiding the transfer at issue under "applicable law."  That actual-creditor requirement—which restricts the universe of transactions a trustee can invalidate—is unique to § 544(b).  Section 544's only other subprovision—subsection (a)—conspicuously eschews any such requirement.  Instead, subsection (a) permits a trustee to invalidate certain transfers that "could have" been voided by a lien creditor, "*whether or not* such a creditor exists." §§ 544(a)(1), (2) (emphasis added).  That contrast in structure reflects a deliberate congressional choice to tie the trustee's rights under subsection (b) to the rights of an actual creditor under "applicable law."  We doubt that Congress meant to supplant that choice when it opted to include § 544 on the lengthy list of provisions it inserted into § 106(a).

What is more, eliminating the actual-creditor requirement would upend decades of practice and precedent.  Section 544(b) was expressly "derived" from § 70e of the Bankruptcy Act of 1898, which had long been understood to give trustees the same rights as creditors under state law.  S. Rep. No. 95–989, p. 85 (1978); H. R. Rep. No. 95–595, p. 370 (1977). As one widely cited lower court decision put it, § 70e "clothe[d] the trustee with no new or additional right . . . over that possessed by a creditor"; it merely placed the trustee "in the shoes of" the creditor, "subject to the same limitations and disabilities that would have beset the creditor in the prosecution of the action on his own behalf." *Davis* v. *Willey*, 263 F. 588, 589 (ND Cal. 1920).

Section 544(b) carried forward that same understanding of the trustee's role.  That is why, for example, defendants in § 544(b) suits are entitled to raise the same defenses against the trustee that they would have been able to raise against the relevant creditor under applicable state law.  Thus, "if the creditor is deemed estopped to recover upon a claim, or is barred from recovery because of the running of a statute

of limitations prior to the commencement of the case, the trustee is likewise estopped or barred." 5 Collier, Bankruptcy ¶ 544.06[3], at 544–29. Similarly, if the "applicable" state law allows a prevailing party to recover attorney's fees, then a defendant who wins a § 544(b) suit can typically recover such fees from the bankruptcy estate. *Id.*, at 544–27. This long-settled understanding of the trustee's § 544(b) powers—and their limits—underscores why it would be so anomalous to treat § 106(a) as expanding the trustee's rights beyond those of an actual creditor.[5]

Even if the language and logic of § 544 and § 106(a) permitted respondent's broad reading of the sovereign-immunity waiver, we note further that our precedents would still foreclose that reading. "Under long-settled law, Congress must use unmistakable language to abrogate sovereign immunity." *Financial Oversight and Management Bd. for P. R.* v. *Centro De Periodismo Investigativo, Inc.*, 598 U. S. 339, 342 (2023). That means that we must "construe any ambiguities in the scope of a waiver in favor of the sovereign." *FAA* v. *Cooper*, 566 U. S. 284, 291 (2012). Here, § 106(a)'s language unmistakably waives sovereign immunity for the federal cause of action created by § 544(b). But, for all of the reasons just given, we cannot say that it does the same for the state-law claims nested within § 544(b)'s "applicable law" clause.

## III

### A

Respondent interprets § 106(a) differently. He asserts that § 106(a)(1)'s use of the phrase "with respect to" requires

---

[5] Some of respondent's *amici* assert that this understanding of the trustee's powers is belied by the fact that, in certain cases, a trustee may recover more money from a fraudulent transfer than an actual creditor would be able to recover. But that exception, which derives from this Court's decision in *Moore* v. *Bay*, 284 U. S. 4 (1931), relates to the trustee's power to *recover* assets from an invalid transfer—not to the scope of the trustee's power to *avoid* the transfer in the first place. It is unsurprising, then, that respondent himself does not rely on *Moore* for support here.

a broad reading of the statute's sovereign-immunity waiver, citing dictionary definitions and cases that adopt capacious readings of similar phrases. These sources, he says, evince Congress's intent to abrogate sovereign immunity for "all subjects that concern or regard" the listed provisions, including the meaning of "applicable law" in §544(b). Brief for Respondent 16.

The authorities respondent invokes, however, cannot bear the weight he foists upon them. Even setting aside that many of his authorities concern different statutory terms, they all examine those terms in very different statutory contexts. For instance, he cites our observation in *Lamar, Archer & Cofrin, LLP* v. *Appling*, 584 U. S. 709, 717 (2018), that the "[u]se of the word 'respecting' in a legal context generally has a broadening effect." But the statute at issue in *Lamar* used the term "respecting" in a quite dissimilar setting—as part of the technical phrase "statement[s] respecting the debtor's or an insider's financial condition." §523(a)(2)(A). Giving breadth to a discrete statutory term like "financial condition" is a far cry from expanding a sovereign-immunity waiver, especially when our "general rule" is "that waivers of sovereign immunity are to be read *narrowly*." *Meyer*, 510 U. S., at 480 (emphasis added).

Respondent's textual argument thus flouts a "fundamental canon of statutory construction": that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 809 (1989). That canon carries particular force when construing phrases that govern conceptual relationships—like "with respect to"—whose meanings inherently depend on their surrounding context. Cf. *Dubin* v. *United States*, 599 U. S. 110, 119 (2023) (explaining that the phrase " '[i]n relation to' " is "context sensitive").

Here, context cuts decidedly against the broad reading respondent advances. As explained, construing §106(a) to reach the elements of §544(b) would not only run counter to

our traditional understanding of sovereign-immunity waivers as purely jurisdictional, but also contravene the text and structure of § 106(a) and § 544(b), and defy our established rule that sovereign-immunity waivers must be construed narrowly. Section 106(a)'s use of a malleable phrase like "with respect to" cannot blunt the countervailing force of those contextual considerations and interpretive principles. Cf. *Presley* v. *Etowah County Comm'n*, 502 U. S. 491, 504 (1992) (rejecting a broad reading of the phrase " 'with respect to voting' " in the Voting Rights Act where doing so "would work an unconstrained expansion of its coverage").

Respondent resists the force of those contextual considerations by appealing to § 106(a)'s enactment history. He emphasizes that Congress purposefully expanded the scope of § 106(a)'s immunity waiver in 1994 by adding the list of 59 specific provisions, including § 544, to the statute. But "no amount of legislative history can 'supply a waiver that is not clearly evident from the language of the statute.' " *Department of Agriculture Rural Development Rural Housing Service* v. *Kirtz*, 601 U. S. 42, 49 (2024) (quoting *FAA*, 566 U. S., at 290). And, even if legislative history could serve that function, respondent's account of § 106(a)'s history is incomplete at best.

Since its adoption in 1978, § 106 has always been understood to provide only a "limited waiver of sovereign immunity in bankruptcy cases." S. Rep. No. 95–989, at 29; H. R. Rep. No. 95–595, at 317. The House and Senate Reports accompanying the 1978 legislation both expressly stated: "Though Congress has the power to waive sovereign immunity for the Federal government completely in bankruptcy cases, the policy followed here is designed to achieve approximately the *same result that would prevail outside of bankruptcy.*" S. Rep. No. 95–989, at 29 (emphasis added); H. R. Rep. No. 95–595, at 317 (emphasis added). This suggests that, at the time of enactment, Congress understood the statute to preserve a basic symmetry between bankruptcy and

nonbankruptcy proceedings—not to expand transferee liability within the bankruptcy system.

Nothing in the 1994 amendments to §106 dislodged that original understanding. When Congress adopted §106(a)'s current language in 1994, it did so with the narrow aim of overturning two of this Court's decisions: *United States* v. *Nordic Village, Inc.*, 503 U. S. 30 (1992), and *Hoffman* v. *Connecticut Dept. of Income Maintenance*, 492 U. S. 96 (1989). Those decisions—neither of which involved §544(b) itself—had held that §106's immunity waiver did not reach monetary judgments entered against the Government. The 1994 amendments served to clarify that §106 does, in fact, "expressly provid[e] for a waiver of sovereign immunity . . . with respect to monetary recoveries." H. R. Rep. No. 103–835, p. 42 (1994). But the amendments did not expand §106's scope beyond what Congress envisioned in 1978. Rather, their goal was "to make section 106 *conform* to the Congressional intent of the Bankruptcy Reform Act of 1978." *Ibid.* (emphasis added).

In sum, §106(a)'s enactment history—to the extent it plays any role here—undercuts respondent's broad reading of §106(a) and reaffirms what the statute's text makes evident: that in waiving sovereign immunity "with respect to" §544, Congress did not alter the substantive elements of §544 itself.

B

Respondent gains slightly more traction in arguing that the Government's reading of §106(a) would blunt the impact of Congress's decision to include §544 on the list of provisions subject to §106(a)'s immunity waiver. After all, respondent says, if sovereign immunity bars every state-law claim capable of furnishing the "applicable law" for a §544(b) suit, then—as a practical matter—no trustee could ever win such a suit against the Government. Thus, respondent asserts, the Government's reading of §106(a) effectively robs the immunity waiver of any meaningful purpose with respect

to § 544; it simply grants federal courts jurisdiction over a set of inherently unwinnable claims.

We are not persuaded that the Government's reading extinguishes § 106(a)'s effect with respect to § 544. For one thing, even if § 106(a) does not enable trustees to prevail against the Government under § 544(b), they might still prevail against the Government under § 544's other subprovision—subsection (a). As noted above, subsection (a), unlike subsection (b), does not contain an actual-creditor requirement. A trustee can therefore use subsection (a) to set aside certain transfers—specifically, transfers of certain liens—without identifying an actual creditor capable of invalidating those transfers under state law. And federal tax law separately provides that tax liens held by the Federal Government may be invalidated under particular circumstances. See 26 U. S. C. § 6323. As a result, a trustee can avoid transfers of certain tax liens under § 544(a) without identifying an actual creditor and without needing to identify a waiver of immunity to sustain a claim under the Internal Revenue Code. By giving courts jurisdiction to hear those types of claims against the Government, then, § 106(a) serves a clear purpose "with respect to" § 544.

Respondent rejects that understanding of § 106(a), insisting that the waiver must be construed to give substantive effect to *all* of § 544's subsections—not just subsection (a). He stresses that § 106(a)(1)'s list of provisions refers to § 544 as a whole, without demarcating any specific subsections. But the same is true of the 58 other Bankruptcy Code provisions on the list, many of which include subsections that plainly do not implicate sovereign immunity at all. Section 303, for example, appears on the list even though subsection (a) of that provision authorizes a kind of action—involuntary bankruptcy petitions—that cannot be filed against the Government. The list also includes § 106 itself, despite the obvious incongruity of applying § 106(a) to its own waiver of sovereign immunity. The sheer number of provisions on the

list with subsections that cannot plausibly be the subject of an immunity waiver rebuts respondent's strained reading of § 106(a).

It is also noteworthy that, in addition to the role that § 106(a) plays with respect to § 544(a), the waiver provision serves an independent function with respect to § 544(b): It grants federal courts jurisdiction to hear § 544(b) claims brought against *state* governments. As outlined earlier, § 106(a) abrogates sovereign immunity not just for the Federal Government, but for any "governmental unit," which includes any "State." § 101(27). At the time Congress enacted § 106(a), a handful of States had chosen to subject themselves to potential liability under their own fraudulent-transfer statutes.[6]  Section 106(a) thus granted federal courts jurisdiction to hear § 544(b) suits against those States—jurisdiction that those courts would have otherwise lacked.

## C

Respondent's argument also lacks support in our precedent. Respondent cites our recent decision in *Kirtz*, 601 U. S. 42, as evidence that Congress sometimes waives sovereign immunity while simultaneously establishing a new substantive right against the Government. But the statutory provision at issue in *Kirtz* bears little resemblance—in text, structure, or operation—to § 106(a).

In *Kirtz*, we held that a provision of the Fair Credit Reporting Act that "explicitly permitted consumer claims for damages against the government" also functioned as a waiver of sovereign immunity for those claims. *Id.*, at 51. Our decision rested on the straightforward proposition that "a cause of action authorizing suit against the government may waive sovereign immunity even without a separate waiver provision." *Id.*, at 53. That proposition is hardly

---

[6] See, *e. g.*, Ill. Comp. Stat., ch. 705, § 505/8(a) (West 1999); N. Y. Ct. Clms. Act Law Ann. § 8 (West 1989); Ohio Rev. Code Ann. § 2743.02(A) (Lexis 1989).

controversial. If Congress establishes a cause of action that—by its own explicit terms—authorizes suits against the Government, then Congress need not also enact an independent waiver of sovereign immunity.

That logic, however, has no bearing on the question at issue here: namely, whether Congress waived sovereign immunity for a *state* cause of action that does *not* explicitly authorize suits against the Government. Nothing in *Kirtz* suggests that courts should presume, in the absence of explicit language to the contrary, that Congress has waived the Federal Government's sovereign immunity for such claims. If anything, *Kirtz* counsels in the opposite direction. Our opinion there reaffirmed that "a waiver of sovereign immunity must be 'unmistakably clear in the language of the statute.'" *Id.*, at 49. And, once again, for all of the reasons previously discussed, § 106(a) does not contain an "unmistakably clear" waiver of immunity for state-law claims nested within § 544(b)'s "applicable law" clause.

D

Finally, we decline respondent's invitation to affirm on other grounds. As an alternative basis for ruling in his favor, respondent proposes a novel reading of § 544(b) that would purportedly allow a trustee to set aside a federal tax payment without ever triggering the Federal Government's sovereign immunity. Per that reading, the trustee could satisfy the actual-creditor requirement by showing that "applicable" state law would permit a creditor to void the tax payment by suing someone *other* than the United States. Respondent claims that he can do that here because Utah law would (in theory) permit an All Resort Group creditor to void the 2014 tax payments by suing the two shareholders who orchestrated those payments, neither of whom is protected by sovereign immunity.

We will not address this argument because it turns on readings of both Utah law and § 544(b) that no other court

has ever considered. Furthermore, respondent failed to raise this argument below. See *Cameron* v. *EMW Women's Surgical Center, P. S. C.*, 595 U. S. 267, 275 (2022) ("[I]f a non-jurisdictional argument was not raised below, we generally will not consider it as an alternative ground for affirmance"). Additionally, "the question [this argument] poses has not been adequately briefed and argued" here. *Granfinanciera, S. A.* v. *Nordberg*, 492 U. S. 33, 38 (1989). We therefore leave it to the courts below to decide whether respondent may pursue this argument on remand.[7]

\* \* \*

Section 106(a) of the Bankruptcy Code abrogates sovereign immunity for the federal cause of action created by §544(b). It does not take the additional step of abrogating sovereign immunity for whatever state-law claim supplies the "applicable law" for a trustee's §544(b) claim. Accordingly, the decision of the Tenth Circuit is reversed.

*It is so ordered.*

JUSTICE GORSUCH, dissenting.

The Court has often warned against "'confus[ing] the doctrine of sovereign immunity with the requirement that a plaintiff state a cause of action.'" *Pennhurst State School and Hospital* v. *Halderman*, 465 U. S. 89, 112 (1984) (quoting *Larson* v. *Domestic and Foreign Commerce Corp.*, 337 U. S. 682, 692–693 (1949)). Yet, to my eyes, the Court's decision today "suffers a like confusion." 465 U. S., at 112.

Three statutory provisions are relevant here. First is 11 U. S. C. §106(a)(1), which waives the government's sovereign immunity "with respect to" §544 of the Bankruptcy Code. Second is §544(b)(1), which empowers a bankruptcy trustee

---

[7] We express no view on the merits of this argument, and we likewise decline to address the Government's alternative arguments concerning preemption and the Appropriations Clause.

to invoke the rights of "a creditor holding an unsecured claim" to set aside any transfer "that is voidable under applicable law." And third is Utah's fraudulent-transfer statute, which here supplies the "applicable law" for purposes of § 544(b)(1). Utah Code § 25–6–203(1) (2025).*

As I see it, those three provisions play out this way. Under the Utah statute, a transfer is "voidable" if, after a creditor's claim arose against the debtor, the debtor (1) "made the transfer" (2) "without receiving a reasonably equivalent value in exchange," and (3) "was insolvent at the time." *Ibid.* Notably, no one before us disputes that these conditions are satisfied here and a good fraudulent-transfer claim exists. 71 F. 4th 1247, 1251 (CA10 2023). Thus, under "applicable law," the relevant transfers are "voidable," and the bankruptcy trustee can use § 544(b)(1) to set them aside. That remains true even though the trustee must sue the United States to void the relevant transfers, because § 106(a)(1) bars the government from raising a sovereign-immunity defense in the trustee's action.

The Court worries that my line of thinking would "modify the elements of a § 544(b) claim." *Ante*, at 529. More exactly, the Court observes that, if a creditor sued the government directly under Utah's fraudulent-transfer statute, the government could interpose a successful sovereign-immunity defense, and the creditor would lose. And, the Court fears, reading § 106(a)(1) to allow a bankruptcy trustee to bring the same claim under § 544(b)(1) would impermissibly "give the trustee a substantive claim for relief against the Government that does not 'otherwise exist.'" *Ante*, at 530 (quoting § 106(a)(5); alterations omitted); *ibid.*, n. 4 (expressing concern that my reading would alter "a core substantive requirement of the underlying § 544(b) claim").

_____

*As the majority notes, recent amendments to Utah's fraudulent-transfer statute "are immaterial to the question presented." *Ante*, at 525, n. 2.

GORSUCH, J., dissenting

It seems to me, however, that the Court conflates two different things. Whether pursued by a private creditor or a bankruptcy trustee, a good substantive claim for relief exists. No one disputes that a fraudulent transfer took place. The question before us is a distinct one: Can the federal government defeat the claim by raising the affirmative defense of sovereign immunity? With respect to a private creditor pursuing relief in state court, the answer is yes. With respect to a trustee pursuing relief in a federal bankruptcy proceeding, the answer—thanks to § 106(a)(1)—is no. Admitting that much does not "modify the elements" of any claim or "'create any substantive claim for relief'" that did not "'otherwise exis[t].'" *Ante,* at 529 (quoting § 106(a)(5)). It merely acknowledges that in one setting, but not another, Congress has chosen to waive an affirmative defense to an otherwise valid claim.

For these reasons, I agree with the majority of circuits to have considered the question that bankruptcy trustees may avoid fraudulent transfers to the United States under § 544(b). See 71 F. 4th, at 1251–1252; *In re DBSI, Inc.,* 869 F. 3d 1004 (CA9 2017); *In re Yahweh Center, Inc.,* 27 F. 4th 960 (CA4 2022). As the Court concludes otherwise, I respectfully dissent.

## Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None